GOODBURN AND WIFE
vs.　　　} JULY TERM, 1849.
STEVENS ET AL.

[PARTNERSHIP—ELECTION OF INTEREST OR PROFITS—DOWER—AGE OF WIDOW—ARREARS OF DOWER—PAYMENT OF MORTGAGE—TRUSTEE'S COMMISSIONS.]

WHERE one of several partners dies, if the surviving partners continue the trade or business, it is at their own risk ; and they will be liable, at the option of the representatives of the deceased partners, to account for the profits made thereby, or to be charged with interest on the deceased partner's share of the surplus, besides bearing all losses.

Where the administratrix of a deceased partner filed a bill against the surviving partners, alleging that the business of the partnership had been carried on under the old name, and large profits made, and praying that her intestate's share of such profits might be paid over to her, as administratrix, HELD—

That by such a proceeding, she had elected to claim profits, and not interest ; and, that a party cannot claim profits for one period and interest for another.

The real estate of a partnership, though regarded in a court of equity as personal estate for all partnership purposes ; yet, in the absence of an express or implied agreement, indicating an intention to convert it into personal estate, will, when the claims against the partnership have been satisfied and the partnership accounts adjusted, be treated in a court of equity, as at law, as real estate, and be subject to the dower of the widow of a deceased partner.

It having been decided that a widow was entitled to an allowance out of the proceeds of sales of partnership lands, in lieu of dower; and the husband having died in 1825, and the sale not having been made until 1845, it was HELD—That the age of the widow at the death of her husband should be taken, in fixing her allowance under the chancery rule.

The right of a widow to dower in partnership property, is suspended until the purposes of the partnership are accomplished, by paying all claims against it, and adjusting the accounts. She cannot, therefore, claim rents and profits from the death of her husband.

A mortgage debt must be paid out of the personal estate of the mortgagor ; and, if that is not adequate, then the balance should be paid out of that portion of the real estate contained in the mortgage.

When a court of equity has control of both personal and real estate, it will, in order to prevent circuity and save expense and delay, apply them in the order in which, as between the heir and executor, they are liable.

When several sales are made at different times, the commissions of the trustee should be calculated upon each sale separately, and the sales are not to be treated as if made at one time.

[On the 15th of January, 1830, Ann B. W. Hayes, who has since intermarried with Joseph Goodburn, filed her bill in this court, stating, that on the [9th of December, 1824, she intermarried with Samuel Hayes, who, on the 20th of May, 1825, died intestate, without issue, possessed of 47-100ths of a manufacturing establishment in Cecil county, called Elk Forge, consisting of several thousand acres of land, with the various buildings thereon, on Big Elk Creek, and land and valuable personal property on Little Elk Creek, and in the states of Delaware and Virginia ; that the business of the firm in which the property, both real and personal, was employed, had been carried on for many years in the name of Samuel Hayes & Co.; said firm at the death of Hayes, consisting of himself, Samuel Stevens and wife, Maria Rudolph, Thomas Hayes, Elizabeth B. Hayes, Robert M. Hayes, and Geo. Hayes.; of whom, all except Samuel Stevens and wife, were his heirs and representatives, as were also the complainant and Henry M. Hayes, the latter of whom, sold his interest in 1827, to the other surviving partners, except Stevens and wife ; that Samuel Hayes, acquired 25-100ths of his interest, by purchase from William Seale, to whom he mortgaged the same to secure the payment of the purchase money, of which there was due at his death, $5000 ; that his other debts amounted to about $700, and his property, independent of his partnership interest, was only worth about $500 ; that at his death, the debts due the firm exceeded those owed by it, and, that there were large profits for division. That failing in her repeated efforts to obtain an allowance of her interest, the complainant, on the 26th September, 1825, took out letters of administration on her deceased husband's estate, since which time, she had frequently tried, without success, to obtain a settlement with the surviving partners ; that the latter continued to conduct the business of the establishment under the same name, with James Jackson, as manager ; that they had made extensive improvements, and, as complainant believed, with the profits of the partnership ; and, that they had divided amongst themselves annually, a sum exceeding $3000, whilst complainant had not received

$100, and Seale had only been paid interest on the residue of his debt. The bill concluded with a prayer, "that the said surviving partners may be restrained from using the said partnership name of Samuel Hayes & Co.; that they may be enjoined from using the share or proportion of the personal property which belonged to the said Samuel Hayes; that a receiver may be appointed to receive the profits of said concern, until this matter shall be fully considered in this honorable court; that the said surviving partners may be compelled to render a full, true, and perfect account of all the transactions of said concern; that they may be compelled to pay off, and satisfy the debt due the said William Seale from that portion of said concern which was originally bought of him; that they may be required to pay over to your oratrix as administratrix of the said Samuel Hayes, his share or proportion of the personal property of said concern, as well as his share or proportion of the profits which have accrued thereon since his death; that your oratrix may have a reasonable and just allowance made for her dower in her said husband's interest in said lands and premises; and, that the said surviving partners, and the said James Jackson, their manager, may answer this bill," &c.

On the 18th of the same month, an injunction was granted as prayed, after which, the defendants filed their answers. The answer of Samuel Stevens and wife, with which the others mainly corresponded, admitted the interest of said Hayes, and its amount, but stated, that the purchase money of the one-fourth purchased of Seale, had not been paid, and submitted that the same ought to be paid out of the personal estate; they admitted the marriage of the complainant, the death of her husband, intestate and without issue, the grant of letters of administration to his wife, the names of his heirs, the use of the partnership name, the names of the partners, and the conveyance by Henry M. Hayes. They stated, that Hayes' interest at his death, went to his heirs, who consented to a continuance of the partnership; they refused to admit the complainants' right to control the affairs of the firm after the death of her husband; denied their opposition to a settlement with

her, stating, that they had been, on the contrary, anxious for it; and admitted the improvements charged in the bill, but presumed complainant could not object to them, as the estate did not descend to her. The defendants further stated, that the personal property belonging to the partnership at the death of Hayes, was used and consumed in the course of business ; they denied that there would be any balance due to Hayes on a settlement, (as the expenses of the concern, which were great, were by consent paid out of the profits to save the realty,) or that there had been any division of the profits since his death. The defendant also stated, that Hayes had been the active manager of the firm, for which he received a salary, that he had drawn his proportion of the profits, and was at his death indebted to the firm ; and objected to the appointment of a receiver.

At July term, 1830, exceptions to the answers were filed by the complainant, and a motion to dissolve the injunction was made by the defendants. On the 2d July, these exceptions were overruled, but the injunction was dissolved, so far as it prevented the defendants from using the deceased's portion of the partnership property.

In August, 1841, Mrs. Hayes, having in the meanwhile intermarried with Joseph Goodburn, proceedings were instituted by which he was made a complainant in the cause, and on the 31st of the same month, a decree was passed, by consent, in a creditor's suit instituted by Sewall and others against said S. Hayes and others, for the sale of the partnership property mentioned in these proceedings, and appointing a trustee for that purpose.

At different times previous to July term, 1844, this cause was, by order of the Chancellor, consolidated with two other cases affecting the partnership property, one of which was the said case of Sewall et al. vs. Hayes, et al., whereby the assignees of William Seale's mortgage and the creditors of the partnership were made parties hereto ; and at the said term the Chancellor passed a decree in all three of the consolidated cases for a sale of all the property for the benefit of all parties,

for a settlement, and reserving the equities of the parties as to the distribution of the net proceeds of sale. On the 21st October, 1845, after much proof had been taken, the special auditor filed his report, in which he assumed, that the partnership was insolvent in 1825, at the death of Hayes, and was closed at that period, and not afterwards continued; and that the complainant Mrs. Goodburn was entitled from that time to the 8th December, 1841, to interest on one-third of Samuel Hayes' interest in the property, estimating its value by testimony taken under the first commission. Various exceptions were taken to this report, both by the complainants and the defendants, and on the 19th January, 1846, the Chancellor (BLAND) passed the following order:

"Ordered, that this case be, and the same is hereby again referred to the said special auditor, with directions to restate the accounts from the pleadings and proofs now in the case, and from such other proof as may be laid before him. It must be recollected, that the persons of whom the partnership in the proceedings mentioned, has been constituted, are to be considered as having been endowed with two separate legal capacities; first, with that of an associated conventional capacity as a partnership; and, secondly, with that of a natural capacity belonging to them as individuals. And that as the social artificial capacity of a partnership is entirely distinct from the natural capacity of each individual; and as each legal capacity stands in all cases as a distinct person, these two capacities of these parties must be carefully observed, and treated throughout this case, as distinct persons in respect to all property belonging to the partnership, and so long as such property may be so held, or be continued under the control of this court in this suit. The accounts are to commence with the original formation of the partnership, and to be brought down through all its mutations, by any changes of the persons by whom it was constituted, unto its final dissolution by the decree of the thirty-first day of August, in the year eighteen-hundred and forty-one. The partnership might have been treated as having been terminated by the death of Samuel Hayes, deceased; but his repre-

sentatives, so far from asking for its then dissolution, have, some of them, insisted on its continuance; and his widow and administratrix has only called for a settlement on the apparent presumption of its continuance ; the partnership must, therefore, be taken to have been continued on its then existing terms, by the express or implied consent and contract of all concerned. All the property belonging to the partnership, of whatsoever nature or kind, must be considered as its estate ; and being so held by those individuals in their associated capacity as a partnership, must be treated as liable, exclusively, and in the first place, to none other than claims against that artificial capacity or person. And, consequently, whether such property of the partnership be considered as real or personal estate, none of it can be held liable to the claim of a creditor, dowress; heir, devisee, widow, legatee, or next of kin, of any living or deceased partner, in his natural capacity, until all claims against the partnership have been satisfied, and the whole concern has been so completely wound up and adjusted, as to enable each member of the partnership to take his due share of the surplus or residuum in his individual or natural capacity. And as a widow of a deceased partner can have dower assigned to her out of none other than such real estate of inheritance of which her husband had been, in his natural capacity, sole seized during the coverture; and as it does not appear that Samuel Hayes, deceased, was at any time so seized of any real estate held by the partnership, as in the proceedings mentioned, his widow can have no right to dower, as claimed by her bill of complaint. And recollecting, moreover, that as no one of the partners, or his representatives can be entitled to anything more than his due share of so much of the partnership property as remains after all its concerns have been entirely closed, it is only that residuum which is to be distributed according to its true value ; and as that true value can only be ascertained by an actual sale, it has been deemed necessary in all cases, to have it all sold, whether consisting of real or personal estate, so as to make an accurate distribution of the net proceeds of sale, considering the whole as personalty, among the partners according to the

36*

terms of the contract of partnership, or amongst the legal representatives of a deceased partner, according to their legal rights and interests.

"And the parties are hereby authorized and allowed to take testimony in relation to such accounts, before any justice of the peace, on giving three days notice as usual; provided, that such testimony be taken and filed in the chancery office, in this case, on or before the tenth day of April next."

[From this order the complainants took an appeal under the act of 1845, chapter 367, which having been argued before the Court of Appeals, MARTIN J. at June Term, 1847, delivered the following as the opinion of the Court :]

This is an appeal from the order of the Chancellor, of the 19th of January, 1846, instructing the Auditor as to the principles upon which he was to state the account between the parties.

By this order the Chancellor has determined :

*First,* That the partnership in which Samuel Hayes was concerned, was to be treated as subsisting until the 31st of August, 1841, when it was dissolved by the decree passed in the case of the creditor's bill ; and that the accounts of the partnership were to be brought down to that period.

*Secondly,* That the entire estate of the partnership, comprising both its real and personal property, was to be regarded as a fund applicable exclusively, and in the first place to the payment of the debts of the partnership in preference to all other claimants.

And *thirdly,* that the real estate held and owned by the partners, and used by them in the business of the partnership, was to be considered as converted for all purposes into personalty—as possessing, in all respects, the qualities and incidents of personal property, and therefore not subject to the claim of dower.

The appeal has been prosecuted at this stage of the cause, in pursuance of the act of Assembly of 1845, ch. 367, enlarg-

ing the rights of appeal in cases where decrees or orders to account have been passed by the chancery courts; and a preliminary point was raised by the counsel, with respect to the questions which were properly open for adjudication on this appeal.

The *first* section of the act provides—"That an appeal may be taken from any decree or order of the court of chancery, or county court sitting as a court of equity, determining a question of right between the parties, and directing an account to be stated on the principle of each determination :" and it is clear, that in our examination of the order, we can only inquire into the correctness of the principles announced by the Chancellor as the basis of the Auditor's report. The right of appeal from these interlocutory orders has been conferred only where a question of right has been determined between the parties, and an account directed to be stated on the principles of such determination—and it must be evident that we could not consider any other questions than those determined by the court below for the government of the Auditor, without exercising original jurisdiction. A power incompatible with the character and attributes of this tribunal, and certainly not intended to be communicated by the statute under which this appeal has been taken.

With respect then to the first question decided by the Chancellor, we think he erred in regarding this partnership as subsisting until the 31st of August, 1841.

The doctrine upon this subject has been stated with clearness and accuracy by Judge Story in his late work on partnership. He says,—"although the partnership be fixed for a particular term or period, yet it is always understood as an implied condition or reservation, unless the contrary is expressly stipulated, that it is dissolved by the death of either of the partners at any time within the period. This doctrine is founded in equitable principles, and is the natural result of the peculiar objects of the contract. Every partnership is founded in a *delectus personæ*, which implies confidence and knowledge of the character, skill, and ability of the other associates; and their

personal co-operation, advice and aid in the management of the business.  The death of any one partner necessarily puts an end to such aid and co-operation.  If, therefore, the partnership were not put an end to by the death of any one of the partners, one of two things must follow: either that the whole business of the partnership must be carried on by the surviving partners exclusively, at the hazard of the estate and interests of the deceased partners, or else, that the personal representative of the deceased, *totoies quoties,* who may be a stranger, wholly unfit for, and unacquainted with the business, must be admitted into the management.  The law will not force either of these alternatives upon the parties, but it presumes, in the absence of all contrary stipulations, that by a tacit consent, death is to dissolve the partnership, because it dissolves the power of a personal choice, confidence, and management of the concern."

In *Crawshay* vs. *Maule,* 1 *Swans,* 508, Lord Eldon said, "The doctrine that death ends a partnership, has been called unreasonable.  Much remains to be considered before this objection can be approved.  If men will enter into a partnership, as into a marriage, for better and for worse, they must abide by it; but if they enter into it without saying how long it shall endure, they are understood to take that course in the expectation, that circumstances may arise from which a dissolution will be the only means of saving them from ruin; and considering what persons death may introduce into a partnership, there is strong reason for saying that such should be its effect.  Is the surviving partner to receive into the partnership, at all hazards, the executor or administrator of the deceased, his next of kin, or possibly a creditor, taking administration?"  And the Supreme Court have declared in *Scholefield* vs. *Eichelberger,* 7 *Pet.* 594, "that although the liability of a deceased partner, as well as his interest in the profit of a concern, may, by contract, be extended beyond his death; yet, without such stipulation, death dissolves the concern."  The same doctrine is announced in *Vullimay* vs. *Noble,* 3 *Mer.* 614; *Crawford* vs. *Hamilton,* 3 *Mer.* 136 ; *Gratz* vs. *Bayard,* 11 *S. & Raw.,* 41 ; *Dyer* vs.

*Clark,* 5 *Metcalf,* 575, and in other cases to which it is unnecessary to refer. It must, therefore, be regarded as an established principle resulting from the nature of the contract, and necessary for the protection both of the rights of the surviving partners, and the estate of the deceased, that the death of either of the partners produces, *ipso facto,* a dissolution of the concern; unless there is inserted in the contract some provision imposing upon the surviving partners, and the representative of the decedent, an imperative obligation to continue it. There is to be found in this contract of partnership no such stipulation, and we think that the death of Samuel Hayes, on the 20th of May, 1825, is to be treated as the true period of the dissolution.

The counsel for the appellee have, however, contended, that if this partnership was continued from the death of Samuel Hayes, to the 31st of August, 1841, with the express or implied consent of Mrs. Hayes, the order of the Chancellor in this respect was correct, and that the consent of the widow and administratrix, to its continuation is to be inferred from her conduct, and especially from the character of her bill, in which she claims a right to participate in the profits earned by the partners, between the death of her husband and the period of the institution of her suit.

Samuel Hayes died on the 25th of May, 1825. On the 26th of September, of the same year, Mrs. Goodburn obtained letters of administration upon his estate, and on the 15th of January, 1830, she filed her bill, in which she charges, "that the personal property of her husband, had been employed in the business of the partnership, by the defendants," and prays, "that they may be compelled to account for the profits made since his death, out of the personal property, and that she may have a reasonable and just allowance for her dower in the lands." And assuming the facts stated in the bill to be true, it was the unquestionable right of the administratrix, at her election, to demand either the actual profits made by the survivors from the use of her husband's share of the prrtnership property, or interest upon the capital thus employed.

In *Story on Part.,* sec. 343, it is stated—"That dissolution

by death puts an end to the partnership, from the time of the occurrence of that event. It completely puts an end to the power and authority of the surviving partners, to carry on for the future, the partnership trade or business. It is, therefore, the duty of the surviving partners, to cease altogether from carrying on the trade or business thereof; and if they act otherwise, and continue the trade or business, it is at their own risk, and they will be liable, at the option of the representatives of the deceased partner, to account for the profits made thereby, or to be charged with the interest upon the deceased partner's share of the surplus, besides bearing all the losses." The rule is also correctly given in a late treatise on the subject. *Cary*, 117.

The author says, "where the surviving partners continue the business, employing in it the share belonging to the representative of the deceased partner, and no express direction has been given by the deceased, relative to the continuance of the business, the party entitled to the share of the deceased, is at liberty to choose, either to receive the legal interest on the capital so employed, or to take the profits that have arisen from the use of such capital ; and in order to enable a party so interested to determine his choice, a decree will be passed directing an inquiry, whether the account of interest or profits will be most advantageous ; but unless *under particular circumstances,* the party having the choice, cannot elect the interest for one period, and the profits for another, but must elect to take one or the other, for the whole period."

In *Crawshay* against *Collins*, 15 *Ves.*, 227, Lord Eldon said, "If the surviving partners do not think proper to settle with the executor and put an end to the concern, but to· make that which is in equity the joint property of the deceased and them, the foundation of increased profit, they must be understood to proceed on the principle which regulated the property before the death of their partner."

The same doctrine is declared and illustrated in the cases of *Brown* vs. *Brown*, 1 *P. W.*, 140; *Hammond* vs. *Douglas*, 5 *Ves.*, 539; *Ex-Parte Ruffin*, 6 *Ves.*, 119; *Brown* vs. *De Tasht*, 1 *Jacob*, 295. *Heathcote* vs. *Hulme*, 1 *Jac. & Walk.*, 122, and is too firmly established to be questioned.

And, therefore, it was the undoubted privilege of the appellant on the case made by her bill, to demand the profits produced by the employment of her husband's share of the property, from his death to the institution of her suit; the assertion of this claim cannot be justly regarded as evidence of an assent, on her part, to the continuation of the partnership, so as to implicate her as a partner, or as a ratification of the acts of the surviving partners.

We cannot perceive anything in the conduct of the appellant evincive of her assent to the continuance of this partnership; and this question is placed beyond controversy by the commanding fact, that in her bill she expressly prays that the defendants may be restrained from using in the business of the concern, her husband's proportion of the personal estate.

There is another objection to the position taken by the counsel for the appellees, that cannot be overcome; and that is, that it is manifest from the answers of the surviving partners, that *they* never consented to receive the administratrix into the firm as a continuing partner. While they acknowledge their liability to account to her for the partnership property as it existed at the death of Samuel Hayes, they reject the idea, that she possessed any authority to interfere in the management of the affairs of the company subsequent to that period. We have already seen that a contract of this description is one of personal confidence, in which the ability, skill, and character of each partner is supposed to enter into the consideration of his associates in the formation of the connection, and that, therefore, there can be no legal continuance of a partnership dissolved by death, in the absence of a new assent on the part of the survivors. You cannot impose upon the surviving partner, the obligation to introduce into the partnership the representative of his former associate. *Thornton* vs. *Dixon*, 3 *Bro. Ch. R.*, 200; *Marquand* vs. *New York Manufacturing Company*, 17 *Johns.*, 535; *Pearce* vs. *Chamberlain*, 2 *Ves. Sr.*, 33.

We think, therefore, that the death of Samuel Hayes, on the 20th of May, 1825, is to be treated as the period of the dissolution of this partnership, and that the accounts are to be taken

at that time, for the purpose of ascertaining the condition of the partnership, and the rights of the respective partners to the joint property.

The *second* and *third* propositions determined by the Chancellor relate to the question, as to what extent and for what purposes the real estate of this partnership was to be treated as converted into personalty? We consider it as now established, by at least a preponderance of authority, and upon proper and just grounds, that the whole partnership estate, whether consisting of real or personal property, is to be regarded in the view of a court of equity, as a *consolidated fund*, to be appropriated primarily and exclusively to the satisfaction of all the partnership engagements. In *Fereday* vs. *Whightwick*, 4 *Con. C. R.*, 319, the master of the rolls said—"The general principle is, that all property acquired for the purpose of a trading concern, whether it be of a personal or real nature, is to be considered as partnership property, and is to be first applied accordingly, in the satisfaction of the demands of the partnership."

In *Hoxie* vs. *Carr*, 1 *Sum.*, 183, Mr. Justice Story, in delivering the opinion of the court, says:

"A question often arises, whether real estate purchased for a partnership is to be deemed for all purposes personal estate, like other effects. That it is so as to the payment of the partnership debts, and the adjustment of partnership rights, and winding up the partnership concerns is clear, at least in the view of a court of equity." And again he says:

"The question, however, in the present case, is not whether real estate, when it is partnership property, becomes to all intents and purposes, in cases of intestacy and wills, personalty, but whether it be so treated in equity as between the partners themselves and the creditors of the partnership. It seems to be the established doctrine of courts of equity, that it is to be treated as personalty, as between the partners and their creditors, in whosoever name it may stand on the face of the conveyance." This principle is sustained by the cases of *Dyer* vs. *Clark*, 5 *Medf.*, 562; *Howard* vs. *Priest*, 5 *Medf.*, 582, and

is to be received, we think, as the correct doctrine upon this subject.

But the true question presented for our consideration, on this branch of the case, and that to which the argument of the counsel has been addressed, is: whether assuming the partnership to have been solvent, on the 20th of May, 1825, the period of its dissolution, the interest of Samuel Hayes in the partnership lands is to be treated as real estate, descendible to his heirs, and chargeable with dower; or as changed for all purposes into personal estate, and distributable as such among his personal representatives?

It cannot be denied, that upon this question, there has been, both in England and the United States, great diversity of judicial opinion and decision. But the case before us is clear of any agreement between the partners, direct or implied, impressing upon their real estate the character of *personalty*, and under such circumstances we consider the true rule to be, that the interest of the deceased partner in the partnership lands is to be treated as real estate, and that the appellant is entitled to a suitable allowance out of the proceeds of the sales of these lands, as an equivalent for her dower; provided, of course, the partnership shall be found to have been solvent at the period of its dissolution.

The doctrine that real estate purchased with the partnership funds for its use, and on its account, is to be regarded in a court of equity, as the personal estate of the company for all purposes of the partnership, stands upon a familiar and just principle. It is the clear case of an implied or constructive trust, resulting from the relation which the partners bear to each other, and from the fact that the estate was brought into the firm, or purchased with the funds of the partnership, for the convenience and accommodation of the trade. For this reason, in whosesoever name the legal title may reside, the estate is held, in the eye of a court of equity, for the use of the partners as the *cestui que trusts*, and if a partner dies, the legal estate of which he was seized as a tenant in common passes to his heirs or devisees, clothed with a similar trust in favor of the surviving

partners, until the purposes for which it was acquired, have been accomplished.

But when all the claims against the partnership have been satisfied, the partnership account adjusted, and the object of the trust fulfilled, in a case where the partners have not, either by an express or implied agreement, indicated an intention to convert their lands into personal estate, no solid reason can be assigned, why the real estate should not be treated in a court of equity, as at law, according to its real nature, and consequently chargeable with the widow's dower.

The proposition thus announced will be found to be sustained, among other cases, by *Thornton* vs. *Dixon*, 3 *Bro. C. R.*, 200 ; *Bell* vs. *Phym*, 7 *Ves.*, 456 ; *Balmain* vs. *Shore*, 9 *Ves.* 508 ; *Cookson* vs. *Cookson*, 8 *Simons C. R.*, 529, and by a very elaborate and able opinion, delivered by Chief Justice Shaw, in *Dyer* vs. *Clark*, 5 *Medf.*, 562. In this case it appeared, that the real estate in controversy was purchased by the partners, with the partnership funds, for the use and convenience of the trade. On the death of Burleigh, one of the partners, his administrator sold his undivided moiety of the lands for the sum of fifteen hundred dollars. The firm was represented to be insolvent, unless the proceeds of the real estate, so sold by the administrator, should be applied to the liquidation of the partnership accounts. The prayer of the bill was, that the plaintiff might be allowed to retain the rents which had accrued since the decease of Burleigh, to be applied to the adjustment of the partnership accounts, and that the defendant might be restrained from paying the proceeds of the real estate to the individual creditors of Burleigh. The widow and heirs of the deceased partner also asserted their claims upon the fund.

In this case, in reference to the rights of the widow, the court say :

"That the right of the widow is not distinguishable from that of the creditors and heirs of the deceased partner. That as far as this estate was held in trust by her deceased husband, for the purposes of the partnership, she was not entitled to dower. For all beyond that, she was entitled, because he held it as real estate, unless she is barred by her release."

It follows from the views thus expressed, that we consider the partnership as dissolved on the 20th of May, 1825, and that *that* is the period at which the partnership accounts are to be stated.

That the whole estate of the partnership, consisting both of its real and personal property, is to be applied exclusively and in the first place, to the payment of all the partnership engagements, as they existed on the 20th of May, 1825.

That if the partnership was solvent at the period of its dissolution, the widow of Samuel Hayes is entitled to a proper allowance out of the proceeds of the sale of the partnership lands, as an equlvalent for her dower. But as to what sum is to be regarded as a fair equivalent for her dower under the circumstances of the case, and whether she has a lien for her dower on the proceeds of the sale, are questions upon which we express no opinion, as they are not open for adjudication on this appeal.

The order of the Chancellor is reversed, and the case remanded to the Court of Chancery for further proceedings.

Decree reversed without costs, and cause remanded.

———

[In the intervening period between the appeal taken and the remanding of the cause to this court, various incidental proceedings were had, unnecessary to be mentioned here. After the cause was remanded as aforesaid, the special auditor filed another report and several accounts, to which sundry exceptions were taken by the parties, complainants and defendants, respectively; and the same having been argued before the present Chancellor (JOHNSON,) he, at this term, (after stating the points decided by the Court of Appeals,) delivered the following opinion, in which the nature of the points now in controversy will sufficiently appear.]

———

THE CHANCELLOR, (JOHNSON :)

It is, therefore, settled by the Court of Appeals, that the accounts are to be taken to the day of the death of Samuel Hayes, and that the right of his administratrix to recover as a creditor, depends upon the state of the accounts at that time.

The Auditor reports that the deceased was a creditor of the firm at that time, and this does not appear to be now disputed; the controversy with reference to this part of the claim of the complainant, applying to its amount, and not to its existence. In the statement of the Auditor, designated as G. No. 19, the principal of this claim is stated to be $6,644 56, and in account G. No. 24, which is an account between the administrator and the surviving partners, interest is allowed her on this sum from the 1st of May, 1826 to the 1st of September, 1848.

Both sides are dissatisfied with this mode of stating the account, the complainants insisting that interest should run from the 1st of May, 1825 to the day of the death, and the defendants insisting that as the bill prays for profits, the Auditor should not have allowed interest, but should have stated an account of profit and loss from 1825 to 1841, when a decree was passed for a sale of the property, and have allowed the administratrix a proper proportion of those profits.

The rule upon the subject of the right of the representatives of a deceased partner at their election, to demand an account of the surviving partners, (if they continue the trade,) of the profits, or to charge them with interest as stated in *Story on Part.*, *section* 343, was adopted by the *Court of Appeals*, when this case was in that court, and must, therefore, be looked upon as the true one.

It is there said, "that if the surviving partners continue the trade or business, it is at their own risk, and they will be liable at the option of the deceased partner, to account for the profits made thereby, or to be charged with interest upon the deceased partner's share of the surplus, besides bearing all the losses."

The correctness of this rule has not been, and of course cannot be denied, sanctioned as it is by the high authority of the Court of Appeals; but it is said, that no election has been made in this case, the complainant, the administratrix of the deceased partner, having only called for an account of the profits with a view of determining whether she will claim a share of those profits or interest on the amount due her intestate.

Such, however, is not my understanding of the bill. It al-

leges that the surviving partners have carried on the business under the name and style of the old firm; and after making expensive improvements from the profits of the concern, they have divided among themselves large annual sums, and it prays that these surviving partners "may be required *to pay* to the complainant as administratrix, the share of her intestate of the personal property of said concern, as well as his share or portion of the profits which have accrued thereon since his death."

My opinion, therefore, would have been, independently of the opinion of the Court of Appeals, that the complainant had made her election to claim a share of the profits; and I should not have been prepared to say, that having so elected, she would have been at liberty afterwards to claim interest.

But the Court of Appeals, as I think, have settled this question also. They say, "it was the undoubted privilege of the appellant," (the complainant,) "on the case made by the bill, to demand the profits produced by the employment of her husband's share of the property, from his death to the institution of the suit." And having thus elected to claim profits and not interest, and the general rule being that the party is not at liberty to claim profits for one period and interest for another, I think the complainants must be restricted to a claim for profits, until the 31st of August, 1841, when the business was brought to a close, by the decree for a sale of the property.

An account of profits must, therefore, be taken down to that period, and upon the sum thus found due the complainant, together with the amount due her intestate at his death, interest must be allowed from the date of the decree to the mean day of sale, under said decree.

Besides this claim against the partnership growing out of its indebtedness to the deceased partner, the complainant, the widow of Samuel Hayes, claims a reasonable and just allowance in lieu of her dower interest, in the real estate owned by her husband, and which constituted a part of the partnership property. This real estate, as has been decided by the appellate court, though regarded in a court of equity as personal estate for all partnership purposes, yet in the absence of an ex-

37*

press or implied agreement, indicating an intention to convert it into personal estate, will, when the claims against the partnership have been satisfied, and the partnership accounts adjusted, be treated in a court of equity as at law, as real estate, and be chargeable with the dower of the widow.

In this case, the Court of Appeals have, in express terms, decided, that the widow of Samuel Hayes, is entitled to a proper allowance out of the proceeds of the sales of the partnership lands, as an equivalent for her dower, if the partnership was solvent at the period of its dissolution. And the question is, what this proportion shall be, and whether, in addition to the equivalent for dower, she is not entitled to rents and profits, from the period of the death of her husband until the sale of the property.

The court of Appeals have said nothing, in regard to any claim of the widow for arrears of dower, or interest on those arrears; nor have they decided whether she has a lien for her dower, on the proceeds of sale. All that has been decided, is, that when the claims against the partnership have been satisfied, the accounts adjusted, and the object of the trust fulfilled, the widow is to be entitled to an allowance out of the proceeds of the sales, as an equivalent for her dower in her husband's interest in the real estate.

The real estate sold for $33,771 27, and the Auditor reports, that on the 17th of September, 1845, that being the date of the last sale, the proportion of the widow, as an equivalent for the interest of her husband therein, was 1-8, she being about forty-seven years of age, amounting to $1,731 91.

It is insisted on the part of the complainants, that this mode of stating the account is erroneous; *first*, because the proportion should have been determined by her age at the time of the death of her husband, in 1825; and, *secondly*, because no allowance is made her, for arrears of dower from that time.

My opinion is, that the death of the husband, in 1825, is the epoch to be taken, in fixing the allowance to be made to the widow in lieu of her dower, and that she must be paid the equivalent for the value of her interest at that time, according

to the rule of this court. The accounts are to be taken to that period; and the equivalent to her, must be measured by the value of her husband's interest in the real estate of the partnership at that time, after the claims of the creditors are satisfied.

But, the complainants insist, that not only has the Auditor erred, in fixing on the 17th of September, 1845, as the period for determining the money equivalent to be paid the widow, in lieu of her dower; but that he has also erred in not making her an allowance for arrears of dower from her husband's death to the day of sale, with interest on the yearly arrears as they accrued.

That she was entitled to a money allowance in commutation of dower, has been settled by the Court of Appeals. Is she also entitled to arrears of dower, and interest on those arrears? The complainants say that she is, and that the annual allowance ought to be computed on one-third of the interest on $13,855 29, the estimated proportion of the product of the real estate belonging to the heirs of her husband.

I do not find it anywhere decided, that a widow can recover interest on arrears of dower; and in *Park on Dower*, 332, Lord Loughborough, is said to have stated, that there were no cases warranting such a proposition. But without deciding, or intending to express any opinion on the right to recover interest on the arrears of dower, when the title of the widow to recover the arrears themselves is clear, the question here is, whether under the peculiar circumstances of this case, and upon this blll, such title can be maintained.

The bill does not claim arrears of dower. The prayer is, that, "the complainant," (the widow,) "may have a reasonable and just allowance made for her dower in her said husband's interest in said lands and premises."

There was no demand upon the defendants, to account for the rents and profits of the lands, the claim and the account of profits, having reference exclusively to profits made by the surviving partners, from the employment of the partnership property, and the proportion thereof, to which the complainant, as administratrix of her husband, was entitled. And it would

seem to be quite obvious, that if the defendants were made to account for profits to the representative of their deceased partner, for the use of this real estate as a part of the partnership property; and are also compelled to pay the complainant, as widow, a proportion of those profits as arrears of dower, they will, to that extent, be paying twice for the use of the same property. Her deceased husband, who owned nearly one half of all the real estate employed in the business of the partners, would receive—or rather she, as his representative, would receive nearly one moiety of the profits, of which, as there were no children of the marriage, she, as widow, would be entitled to one half; and then, upon the ground taken by the complainants, she would as dowress, receive one-third of the supposed annual value of the interest of her husband in the same lands. It appears to me, there can be no equity in this, and it cannot be allowed.

There are, moreover, circumstances attending this property, which would seem to take it out of the general rule applicable to ordinary cases of bills for dower, and rents and profits. The general rule is well settled, that the courts will decree dower, and rents and profits, to the widow from the death of her husband. *Wells and Wife* vs. *Beall,* 2 *Gill and Johns.*, 468.

But this property, being partnership property, and as such subject to the partnership engagements; and as upon the death of the deceased partner it descended to his heirs at.law, clothed with an implied or constructive trust, until the purposes of the partnership were accomplished; the right of the widow to dower was postponed until those purposes should be accomplished by paying all claims against the partnership, and adjusting the accounts. Such was the decision of the Court of Appeals, when this case was before it in 1847.

The right, therefore, of the widow was not a fixed and absolute right, but one depending upon the contingency, that there would be a surplus after paying the debts of the partnership; and consequently it cannot, I think, be maintained, that the principles applicable to cases in which the title of the widow is clear, and consummate by the death of the husband, will apply to this case. The property was subject to a trust para-

mount to the title of the widow ; and until that trust was fulfilled, her right was in suspense; and hence she cannot have rents and profits from his death. Dower could not have been assigned to her at that time, nor can she have rents and profits, the incidents to the dower.

It is true, as has been urged, that it was the business of the surviving partners to pay the debts, and wind up the concern; but if they failed to do so, the complainant had it in her power to stimulate them by a bill in this court : and a bill was accordingly filed by her for that purpose. But an examination of the proceedings will show that the long delay which has taken place, and the slow progress of the cause, is chargeable, perhaps, in a greater degree to the complainants than the defendants.

My opinion therefore is, that the complainant can only have an equivalent in money, payable out of the proceeds of sales, according to her age, and the state of her health at the period of the death of her husband, with interest thereon from the mean day of sale ; but that she is not entitled to arrears of dower, or interest in lieu thereof, from his death until that day. And I am also of opinion, that the widow is entitled to receive this sum in preference of the creditors of the new partnership, becoming such since the death of her husband.

With regard to the bonds and mortgage to William Seal, I think the principal sums should be paid out of the personal estate of the mortgagor, in the hands of his administratrix, and if that is not adequate for their payment, then the balance should be paid out of the proceeds of that portion of the real estate contained in the mortgage.

The complainants claim in their bill, that the defendants shall be compelled to pay this claim from that portion of the concern which was originally bought of Seal, which was a clear recognition of its validity ; but the rule being, that as between the heir and the executor, the personal estate shall exonerate the real—being the primary fund for the payment of the mortgage—the heir in equity shall have the preference, and may insist upon such application of the personal estate. 2 *Powell*, 777, 780.

This being so, I can see no reason why the heirs at law of Samuel Hayes may not insist, that his personal estate, as between his personal representatives and themselves, shall be applied in exoneration of the real. And as both the personal and the real estate are now in this court, brought here by the act of the administratrix, it seems to me, this court may now see, that the proper application is made.

If this mortgage debt should be paid by the heirs, they would have a clear right to reimbursement out of the personal estate, and the latter being in this court, no good reason suggests itself, why the proper application should not be made at once, to prevent circuity, and save expense and delay. It is not that this court usurps the powers of the Orphans Court, but upon a principle of equity, which regards the personal estate as the primary, and natural fund for the payment of debts ; and the court will—having both funds under its control—apply them in the order in which, as between the heir and executor, they are liable. 1 *Story's Eq.*, sec. 571.

I think, therefore, this mortgage debt, or the principle thereof, must be paid out of the personal estate, if it is sufficient for the purpose.

I have said, that the principal sums due upon the mortgage to William Seal, should be paid out of the personal estate of Hayes, the mortgagor; but I do not think the interest should be, which accrued between the death of Hayes, and the sales of the property in 1845. During that period the defendants were in possession of the mortgaged property, and acknowledged that they received some profits; though, in their answer they say they received very little;—the profits being applied, as they represent, to keeping in repair, and enlarging the establishment. It appears to me, however, that they ought to have kept down the interest upon the debt, and that the payments which they made on account of interest, and which are stated in the Auditor's statement G. No. 6, must be assumed to have been made out of the profits.

There is another reason why the interest upon the bonds and mortgage to Seal should not be thrown upon the personal estate in the hands of the administratrix of Hayes.

The evidence shows that the property of the partnership was worth quite as much at the death of Hayes in 1825, as when the sales were made, although expensive improvements were made out of the profits after his death, and the accumulation of interest, therefore, upon those bonds, would be a clear loss to the estate of Hayes, if the burden must be borne by his personal estate. The surviving partner might, and ought, upon his death, to have sold the property and divided the proceeds among the parties entitled, according to their respective interests, and in that event, the estate of Hayes would have had to pay only the amount due at that time. But, by keeping it, and carrying on the business, they suffered a large amount of interest to accrue, which if not paid by them, must be paid by the estate of Hayes, without any corresponding advantage in the appreciation of the property. This, it seems to me, ought not to be allowed. According to all the authorities, the surviving partners have no right to expose the estate of the deceased partner to the vicissitudes of the business, without the consent of the persons interested in his estate.

The interest, therefore, upon these bonds to Seal, from the death of Hayes until the property was sold, must be paid out of the profits, or out of the defendant's proportion of the proceeds of the real estate bought of him.

With regard to the bond to Rachel Bryant, (from Samuel Hayes, which was paid by certain of the defendants, and assigned to them,) it is, I think, barred by limitations, and cannot be set up as against the complainants.

Several sums are allowed the trustee in statement G. No. 14, which, I think, are not properly chargeable against the proceeds of the sales.

His own personal expenses, and the travelling expenses of other persons, and for clover seed, and other matters connected with the cultivation of the land, cannot be allowed. Nor can he be allowed for sums paid R. M. Hayes, nor for postages; but I see no objection to an allowance for counsel fees, which are admitted to be reasonable.

The complainants' 8th exception, (to the deduction from her claim, of that proportion of the costs incurred in the cause, and

the trustees' expenses and allowances, which the interest of her late husband bore to the whole partnership estate,) appears to me to be well taken. The administratrix of Hayes is to be regarded as a creditor, and entitled to be paid as any other creditor would be, in preference to the parties who held the estate subject to her claim.

It has already been said, that the bonds to Seal, secured by the mortgage, are, as to the principal sums, to be paid out of the personal estate of Hayes in the hands of his administratrix, if it be sufficient; and that the interest thereon from the death of Hayes until the property was sold, must be paid by the defendants, either from the rents and profits, or out of their proportion of the proceeds of the real estate. The interest from the period of the sales must be paid by the administratrix out of the proceeds of the personal estate. And I have also said, that this court will retain the money, and make the proper application of it in this court, upon the grounds already stated.

But it is not to be understood, that the court will, in this proceeding, discharge the functions of the Orphans' Court, and settle the administration accounts; and, therefore, when the accounts are stated, ascertaining the sum due the complainant, as administratrix of her husband, after deducting therefrom the amount payable on the mortgage debt, the residue will be paid over to her, to be accounted for in the Orphans' Court of the proper county.

It may also be said, that I approve of the mode in which the Auditor has stated the trustees' commissions on the several sales, (the trustees having calculated the commissions separately on each sale, when made at different epochs, and not treated the sales as made at one time;) and that in charging interest on Seal's bonds, he should charge up to the mean day of sale.

Many of the exceptions going to the details of the accounts, it is not necessary to decide, as the present questions which will be considered by the Orphans' Court, when the accounts of the administratrix are stated there.

[No appeal was taken from this order.]