## LOUISA S. TAYLOR ᴇᴛ ᴀʟ. *vs.* JAMES W. DENNY ᴇᴛ ᴀʟ., Tʀᴜsᴛᴇᴇs.

*Rules of lower Court: not in record. Trustee's commissions: sales made at different times; rule in Baltimore City. Allowance of counsel fees.*

Although the rules of a lower Court are not in the record, yet if it is conceded that they are properly stated in the brief, and no objection is made to their absence from the record, the Court of Appeals will consider the case as though the rules had been regularly presented.                              p. 126

The general rule is that when a trustee's sale is made in several sales, at different times, the commissions of the trustee should be calculated upon each sale separately, and the sales are not to be treated as though made at one time.
                                                          p. 127

But a trustee should not be permitted to make sales at different times and receive full commissions on each sale unless there is a valid reason for making the sales separately.        p. 128

In the absence of any rule of Court, the question must be left largely to the discretion of the Court having jurisdiction over the trustee.                                  p. 129

The rule of the Circuit Court of Baltimore City after establishing the scale of commissions, on varying sums, to be allowed trustees on sales under decrees provides that "the above allowances are subject to be increased in cases of postponement at the request of the defendant, or of extraordinary difficulty or trouble, or from other circumstances, and to be lessened in cases of negligence or other default, etc., at the discretion of the Court." Under this rule the Court may direct the auditor to allow to a trustee the full amount of commissions on each of several sales reported regardless of whether they were separate sales or not, and if satisfied the allowance was properly allowed by the auditor the Court

may *then* ratify the allowance, as it might have authorized it before the audit was made. p. 129

In the absence from the record of any evidence to the contrary, the Court of Appeals will assume that the lower Court applied its own rules correctly. p. 129

Where a trustee is also an attorney and renders legal services in connection with the trust, he will, in a proper case, be entitled to be paid for his professional services out of the fund, as though the two capacities were separate. p. 130

A trustee is entitled to be allowed attorney's fees paid his counsel, where it appears that the fees were fair and reasonable, and that the services were for the benefit of all the parties interested in the estate. p. 131

Where this is not specially provided for in the decree such fees may be allowed out of the fund in the trustee's possession. p. 131

The rule applies only when the Court can see that it is necessary for the proper administration of the trust for the trustee to have legal advice or the aid of an attorney. But a trustee has no right to take part at the expense of the estate in contentions between those who are entitled to the estate, unless the estate will clearly be subject to a loss if one or more of the *cestui que trustent* prevails against the others; or unless some of the beneficiaries are not represented by counsel, but rely on the trustees to see that justice is done them in the distribution. p. 132

The fact that a trustee may have received commissions that are insufficient compensation in view of his services and annoyance as trustee, does not justify paying him out of the funds more for his services as counsel than should properly be charged to the estate. p. 137

*Decided May 10th, 1912.*

Appeal from the Circuit Court of Baltimore City (HEUISTER, J.). The facts are stated in the opinion of the Court.

This cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*George R. Gaither,* for the appellants.

*T. Howard Warfield* (with whom was *James W. Denny* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This appeal was taken from a decretal order of the Circuit Court of Baltimore City overruling exceptions to the allowance of certain commissions and a counsel fee and ratifying the auditor's account.

First: The exceptions to the commissions were based on the fact that the auditor allowed them on the proceeds of what he treated as four separate sales, instead of on the aggregate amount reported for distribution. The rule of the lower Court is not in the record, but as we understand it to be conceded that it is properly stated in the briefs, and no objection was made to its absence from the record, we will consider the case as if the rule was regularly before us. It provides that "On sales under decrees or orders of the Court, the following allowances will be made to trustees and receivers," and then follow the amounts to be allowed on the first $300, and on the second $300, and, etc., ranging from nine per centum on the first to three and a half per centum on the tenth $300, making one hundred and sixty-five dollars on the first $3,000.00. It then allows three per centum on the proceeds of sales above $3,000.00, and up to $25,000.00, two per centum on those above $25,000.00, and up to $50,000.00, and provides that on the proceeds of sale in excess of the last named sum the commission shall be in the discretion of the Court.

The total proceeds of sales reported amounted to $30,-691.25, but there were two reports filed—one as of January 28, 1911, which contained two items, $3,425.75 and $9,-750.50, and the other of February 18th, 1911, which also

contained two items, $2,895.00 and $14,620.00. The last named sum embraced the proceeds of sales of ground rents and other real estate, while the other three were of sales of personal property. The reports are not in the record, but the auditor testified to those facts. In answer to the question how he arrived at the commissions allowed, he said: "I can say first in explanation that when the papers were referred to me to state an account nothing was said to me by the trustees about commissions at all, and I, therefore, computed them in accordance with equity rule 24 as followed by the auditors in practice. I treated first the sales of the personal property, stocks and bonds, as separate sales when made separately." When asked by the Court, "You treated each occurring sale as a separate accummulation of sales?" he replied, "As a separate sale when made separately." He also stated that the sales of personalty were made at the Stock Exchange and the sales of the real estate were made at public auction.

In the absence of the reports and more definite evidence than we have, it is difficult to ascertain from the record whether the sales mentioned in the respective reports were made the same day, or when they were made with reference to each other, but according to the auditor they were made separately, and he treated them as separate sales—that is to say, the sales which produced the four sums above named. The only reported case in this State on the question, we have found, is *Goodburn* v. *Stevens,* 1 Md. Ch. 420, where the Chancellor held that "When several sales were made at different times, the commissions of the trustee should be calculated upon each sale separately, and the sales are not to be treated as if made at one time." That case in referred to in a note in *Miller's Equity Procedure,* 663, where, after making the above quotation, the author adds: "To the same effect see *Myers* v. *Myers,* Circuit Court of Baltimore City, Daily Record, January 24th, 1891." The rule of the High Court of Chancery on the subject was substantially the same at the time of the decision in *Goodburn* v. *Stevens,* as will be

seen by reference to *Alexander's Chancery Practice,* 147 and 370. Inasmuch as the Court's attention was especially called to the allowance made by the auditor and the Court overruled the exceptions, it is evident that the allowance was in accordance with the construction placed on the rule by that Court, and the auditor's testimony shows it was in accordance with the practice followed by the auditors of that Court.

It would be difficult to announce a general rule on the subject applicable to all cases, for it must depend largely on circumstances. The rule clearly does not mean that the auditor must in all cases, where there has been more than one sale made under one decree, fix the commission as if there had only been one sale, regardless of when the sales were made, or of the reasons for selling at separate times. A trustee might, for example, sell properties at one sale, the proceeds of which amounted to twenty-five thousand dollars, and then by reason of his failure to get any or adequate bids be required to withdraw the rest of the property and sometime afterwards readvertise and sell that. He might have as much, or more, trouble at the second sale than he did at the first, and yet if, in fixing the commission, the proceeds of the second sale must be treated as simply added to those of the first, he might not be properly compensated for his trouble at the second. There are many continuing trusts in which such a rule would work a hardship on the trustee. Then when a trustee has both real and personal property to sell and he sells the real property at public auction at the Real Estate Exchange in Baltimore, or elsewhere, in accordance with the established practice in such cases, and then sells stock and bonds at the stock exchange through a broker, there may be cases in which the Court would be justified in treating them as separate sales, although made the same day and reported to the Court in the same reported sales. On the other hand, a trustee should not be permitted to make sales at different times and receive full commissions on each unless there is a valid reason for making them separately. It might be possible for a trustee to burden an estate for his

own benefit if the privilege of selling separately is too greatly extended. Such questions must, however, be left largely to the discretion of the lower Court having jurisdiction over the trust—in the absence of rules which leave it no discretion.

We have thought it proper to say thus much on the subject, but this case seems to us to be free from difficulty. The rule of the Circuit Court of Baltimore City above referred to, after fixing the rates of commissions to be allowed on sales under orders or decrees, has the following provision in it: "The above allowances are subject to be increased in cases of postponement at the request of the defendant, or of extraordinary difficulty or trouble, or from other circumstances, and to be lessened in cases of negligence or other default of the trustee or receiver, *at the discretion of the Court.*" If the circumstances surrounding these sales had been more fully presented by the record we would not have been justified in disturbing the action of the lower Court, unless there had been shown a clear abuse of the discretion vested in it, and in the absence from the record of those circumstances we must assume that the Court acted properly. It could undoubtedly, under the above quoted provision in the rule, have directed the auditor to allow the full amount on each of the four sums reported, regardless of the question whether they were separate sales and for that reason could be allowed, and if it were satisfied that it was properly allowed by the auditor, as its decretal order indicates it was, it could *then* ratify the allowance made by the auditor just as it could have authorized it to be done by an order passed before the audit was made.

We therefore find no reversible error in the action of the Court in reference to the commissions.

Second: The remaining questions to be considered are, (*a*) were the trustees entitled to an allowance for counsel fees? and (*b*) if they were, was the fee allowed excessive?

(*a*) There can be no doubt that the trustees were entitled to some allowance for counsel fees. It is said in the brief

of the appellants: "It is conceded that the appellee is entitled to a fee for filing the bill of complaint, and for whatever advice he gave the trustees up to that time after the death of Miss Taylor, but it is difficult to see upon what ground the trust estate should be liable for the employment of counsel in litigation over a trust estate instituted by the trustees themselves, by which all of the parties were brought before the Court and represented by counsel, and by which proceedings the trustees were relieved of all responsibility in the matter." It may be well to remark in passing that the fact that Mr. Denny was also one of the trustees would not deprive him of proper compensation for services rendered by him as attorney for the trustees. As was said by JUDGE PEARCE, in *Title Co.* v. *Burdette,* 104 Md. 666: "Where a trustee is also an attorney and renders legal services in connection with the trust estate, he will, in a proper case be entitled to be paid for his professional services out of the common fund, as though the two capacities were separate." See also cases in note on page 664 of *Miller's Eq. Procedure.* It is not necessary to prolong this part of the opinion in order to show that the trustees were entitled to *some* allowance for counsel fees and we will consider the remaining question.

(*b*) The Court below allowed Mr. Denny $2,000.00 for legal services connected with the estate. Was that excessive, under all of the circumstances of the case? Some of the matters referred to in the petition of the trustees for the allowance of a counsel fee to Mr. Denny were in our judgment included in the duties of the trustees, for which they are supposed to be compensated by the commissions allowed them. It may be that the Court would have been justified in allowing the trustees' compensation in addition to the regular commissions, if application had been made to it, but that is not before us, as we are only called upon in this case to pass on the compensation to Mr. Denny as counsel. It is not always easy to distinguish between the duties performed *as trustee,* and those performed *as counsel,* when the same

person acts in both capacities, but there are certain well settled principles which are controlling when the right of trustees to an allowance for counsel fees is involved. In *Miller's Eq. Proc.*, 663, it is said: "It is a general rule that when a trustee finds it necessary to employ or advise with counsel as to the proper management of the trust estate, he will be allowed, under the head of just allowances, such reasonable fees as he may have paid in properly taking the opinion and procuring the direction and assistance of counsel." In *Laroque* v. *Candolle*, 4 Md. Ch. 347, the Chancellor said: "It is the practice of the Court, under the head of 'just allowances' to reimburse the trustee when administering his trust under its direction all his reasonable costs and expenses, including money expended by him in properly taking the opinion and procuring the direction and assistance of counsel. 2 *Daniell's Ch. Pr.*, 1430, 1431; *Jones* v. *Stocketl*, 2 *Bland*, 417; 3 *Daniell's Ch. Pr.*, 1586. But it is believed this is the extent to which the practice has been carried." That case was cited with approval in *Brady* v. *Dilley*, 27 Md. 570, where it was held: "That the trustee is entitled to be allowed attorney's fees paid his counsel, where it appears that the fees were fair and reasonable, and that the services rendered were indispensable to the trustee in the proper execution of his trust." In *Griffith* v. *Dale*, 109 Md. 700, it was said: "There seems to be no inflexible rule of law on the subject, but the general principle, which is justified by sound reasoning and by authority, is that where a trustee employs an attorney to render necessary services for the benefit of all the parties interested in the estate, or seeks advice for the proper administration of his trust, a reasonable fee, though not specially provided for in the decree, is to be allowed for such services out of the common fund in his possession. In this case the attorney did not represent all the parties." It was later said in that opinion that "the Court does not consider the employement of an attorney as a usual expense, but rather as an extraordinary one, to be paid for by the person procuring the same, and only allowed out of a common fund

when the services rendered are for the benefit of all the parties interested, and not in hostility to part of them." So in *Title Co.* v. *Burdette, supra,* after stating what we have quoted above, JUDGE PEARCE, said: "But the primary question is, whether the given case is a proper one for allowance out of the common fund."

Many other cases in this State might be cited, in some of which counsel fees were allowed, in others rejected, and in still others reduced, but it may be stated as a general proposition that the right of a trustee to employ counsel and pay him out of the trust fund is thoroughly established, when the Court can see that it is necessary for the proper administration of the trust for the trustee to have legal advice or the aid of an attorney. Of course that right includes cases where it is necessary, or proper, for the trustees to be represented in Court in the defense of the estate, or some part of it, or to recover what belongs to it, but the trustees are not only not called upon to do so, but have no right to take part, *at the expense of the estate,* in controversies between those who are entitled to the estate, unless the estate will clearly be subjected to loss if one or more of the *cestuis que trustent* prevail against the others, or at least unless some of the beneficiaries are not represented by counsel, but rely on the trustees to see that justice is done them in the distribution. There may possibly be some such cases as the latter referred to, where the Court could authorize a trutee to employ counsel to prevent manifest injustice to beneficiaries who, without fault on their part, are not represented by counsel, but that could only be done, if at all, under very exceptional conditions.

Let us apply these principles to the facts of this case. The trustees undoubtedly had the right to file a bill in equity and have all persons who might be interested made parties, and they could employ counsel for that purpose, and when these appellants filed a cross-bill, they were required to answer. But all of the parties interested in the matters litigated after those bills were filed were represented by

counsel, and the trustees were not called upon to take part in all of the controversies between the beneficiaries under the will. The position taken by them in their supplemental bill—that all of the property excepting 130 W. Pratt street, left to Lillie T. White, should be sold—possibly caused some of the litigation, and that position was not to the advantage of the estate, as it would necessarily would have increased the costs and expenses. The trustees did not represent all of the persons interested, and some of their contentions were hostile to at least some of the parties. The will was very explicit as to the legacy of ten thousand dollars left Bishop Randolph and other items involved which were free from difficulty might be mentioned.

But we cannot agree with the position taken by the appellants in their brief, which is quoted above, which in effect is that the trustees were not entitled to be allowed any compensation for services rendered by counsel after the bill was filed and the parties brought into Court. They were required to answer the cross-bill filed by the present appellants, and without attempting to point out all such matters involved in the two previous appeals as they had the right to be represented in, there were a number of questions concerning which they were entitled to have the advice and assistance of counsel, and some of those arising after the decision of this Court in *Harrison* v. *Denny, Trustee,* 113 Md. 509, were more or less complicated and intricate—owing in part to the stand taken by some of the beneficiaries.

It is generally difficult to determine with precision the value of services rendered by a counsel as distinguished from those he is called upon to render as trustee, when he acts in both capacities, and it is a disagreeable duty to perform. In many, perhaps most cases, the safer rule for the appellate Court is to leave the amount of the fee to the lower Court, but as we have been made familiar with what has occurred in this case, by the several appeals which have been before us, and as we are satisfied that for some of the services relied on as a basis for fixing the amount of the fee the attorney

was not entitled to be compensated out of the estate, we have concluded that the fee allowed is excessive and that it should be reduced to the sum of $1,000.00. We have not overlooked the certificate or the testimony of the prominent attorneys in the record, but of course their conclusions were based on the assumption that all of the services rendered by Mr. Denny were properly chargeable against the estate. Nor must the conclusion reached by us be considered as in any respect a reflection upon or criticism of Mr. Denny in making the claim he did, for our familiarity with the administration of this trust, as a result of the several appeals that have been before us, convinces us that he has not been very liberally compensated for the work he has done and annoyance he has encountered. But our judgment in this case must be controlled by what we believe to be a fair compensation for such services *as counsel* as can under our decisions be properly charged against the estate.

It follows that the decree of the 26th of September, 1911, must be affirmed in part and reversed in part, but we will direct the costs to be paid out of the trust estate.

> *Decree affirmed in part, and reversed in part and cause remanded, the cost to be paid by the trustees out of the funds in their hands.*