24  505
110  215
24  505
117  398
24  505
124  559
24  505
132  178
24  505
154  515

COLLUMB *et al. v.* READ *et al.*

Real estate, acquired with partnership effects in collecting debts due the firm, although so conveyed as to make the partners tenants-in-common at law, is, in equity, considered as converted into personalty, for the purpose of subjecting it to the debts of the firm, in preference to those of the individual partners.

The trustee under an assignment of land which is declared fraudulent at the suit of a creditor, is not bound to account for the rents received and applied according to the terms of the trust before the commencement of the suit, or the attaching of any specific lien on the lands.

APPEAL from the Supreme Court. The plaintiffs, as judgment creditors of George Caldwell and Robert Fero, commenced this action in February, 1850, to procure a satisfaction of their judgment out of the property and equitable interests of the defendants, and particularly to set aside certain assignments and mortgages of the defendants' property which were alleged to be fraudulent as against their creditors. The plaintiffs recovered a judgment in the Supreme Court against George Caldwell and Robert Fero, on the 13th day of September, 1848, for $11,333.44, and on the 23d June, 1849, they recovered a like judgment against George Caldwell for $1,272.29. They were duly docketed in Montgomery county, where the defendants resided, and executions were returned unsatisfied. It did not appear that Fero had any property, and no question was made respecting him. Prior to March 1, 1848, George Caldwell was the owner of considerable real estate, consisting of lots and buildings situated in the village of Canajoharie, which he, on that day, mortgaged to the defendant, Read, to secure $8,275.10, with interest, in seven annual payments. On the same day, Caldwell mortgaged his household furniture to Read to secure $500, payable by installments, the last payment of which would mature in three years.

George Caldwell and his brother, the defendant Joseph W. Caldwell, were partners as retail merchants at Canajoharie, and in the spring of 1848 the firm and both the partners were in

insolvent circumstances, owing more than they could pay. On the 15th April, 1848, they sold and conveyed the goods constituting their stock in trade to Read for $13,623.95. The price was arrived at by deducting fifteen per cent from the cost price of the dry goods, and twelve per cent from that of the hardware. For this sum Read gave his five notes, of equal amount, payable at nine, twelve, fifteen, eighteen and twenty-four months, with interest after twelve months. Read was the father-in-law of both the Caldwells. He had retired from business, and was possessed of a handsome property. On the 17th day of the same month of April, George Caldwell and the firm of G. & J. W. Caldwell each made assignments for the benefit of their respective creditors, with preferences. The defendants Read and Mitchell were trustees under the assignment of the firm, and Mitchell was a trustee under that of George Caldwell. One Ferguson was also a trustee under both assignments, but he declined to act under either. The assignment of the firm embraced three several pieces of real estate, being village lots, with the buildings thereon, the title to which was in George and Joseph W. Caldwell, who held under ordinary conveyances, which would make them tenants-in-common at law.

The case was first heard on pleadings and proofs before the late Justice DANIEL CADY, who decided that the assignment of George Caldwell was fraudulent and void, as against the plaintiffs; but that the assignment of the firm was valid. An account was ordered to be, and was taken, respecting the transactions of Mitchell the trustee. Appeal was taken from this judgment to the general term, where judgment was given, declaring the personal mortgage also fraudulent and void, and affirming, in other respects, the decision before Mr. Justice CADY. On an appeal to this court there was a general judgment of reversal, and the case was remitted, with a direction that a new trial should be had. The only question then passed upon here, was the validity of the assignment of the firm. That was considered fraudulent, for the reasons that it embraced real estate, the title to which was in the partners as tenants-in-com-

mon, and that there was no evidence that it had in any way become partnership property. It was held to be subject to the same rule as though the lands had been the individual property of the separate partners, and as though George Caldwell had conveyed his moiety in trust for the payment of a part only of his debts, with a reservation of the residue to his own use. (16 N. Y., 484.) On the second trial, which was before Cornelius L. Allen, Esq., as a referee, evidence was given touching (among other things) the manner in which the real estate included in the joint assignment was acquired and held.

The referee found and decided, as matters of fact, besides the position upon which there was no dispute: 1. That the sale of the stock of goods was *bona fide* and without any intent to hinder or defraud creditors, and in point of law he held it valid; 2. That the several parcels of real estate embraced in the joint assignment " were, and each of them was, a part of the copartnership property of the said firm of G. & J. W. Caldwell; that the same had been acquired as copartnership property, with copartnership effects, in the collecting and receiving debts due the said firm, and had always been inventoried and treated, and were, at the time of said assignment, held as, and in fact were, a part of the copartnership effects and property of said firm;" and that the assignment executed by said firm was *bona fide*, and not fraudulent, and, therefore, he held that it was valid: 3. That the mortgage of land executed by George Caldwell to the defendant Read, to secure $8,275.10, was for money justly due and owing, and was not fraudulent; and, as a conclusion of law, that it was legal and valid: 4. That the chattel mortgage was given for a debt to the amount proposed to be secured, due and owing from the mortgagor to the mortgagee, and was duly filed; but the furniture mortgaged remained in the possession of the mortgagor and in the use of his family down to the time of the trial. That Mitchell, as assignee, first sold the right and title of the mortgagors to these goods, in May, 1850, for $40; but afterwards, in July in the next year, Read, the

mortgagee, sold said goods at auction on the mortgage, and bid them in himself for $418.30, which he applied in satisfaction of so much of the mortgage debt, and he afterwards conveyed them by bill of sale to his daughter, the wife of the mortgagor, without having ever taken any actual possession of them. As a conclusion of law, he found that this mortgage was void as against the plaintiffs' judgments and executions: 5. As to the separate assignment of George Caldwell, he states that the defendant Mitchell accepted the trust, and commenced to dispose of the property and to apply the proceeds as directed by the assignment, and continued to do so in good faith until the commencement of the suit, and that after suit brought he disposed of the real estate. In the conclusions of law he decided that this assignment is fraudulent and void as against the judgment of the plaintiffs. He did not state the facts on which his conclusion was based, but he added that the trustee's sales, made prior to the commencement of the suit and the application of the proceeds of the property, ought to be confirmed. As further facts on this branch of the case, he found that Mitchell had appropriated, in good faith, all the money he had realized as assignee according to the trusts of the assignment before suit brought; and that the money which he had received since the commencement of the suit, or which with diligence he might have received, was not equal to his necessary disbursements for the preservation of the assigned estate. The plaintiffs excepted to the most material of the points in this decision, so far as they were adverse to them. Judgment was rendered according to the decision of the referee. The plaintiffs were charged with the costs of the defendants, Read and J. W. Caldwell. As between the plaintiffs and Mitchell, no costs were given to either as against the other, as to the litigation respecting the assignment; but the sales and dispositions of property made by Mitchell, as assignee, under the assignment of George Caldwell, before suit brought, and the appropriation of the proceeds, were confirmed. The plaintiffs, however, were allowed their costs of the litigation respecting the chattel mortgage against George Caldwell.

The plaintiffs appealed from so much of the judgment as was adverse to them, but none of the defendants appealed. Some other portions of the evidence are adverted to in the following opinion.

*William D. White*, for the appellants.

*Francis Kernan*, for the respondents.

DENIO, J.    The most material question raised by this appeal is, whether the assignment made by the firm of G. & J. W. Caldwell was fraudulent and void on account of its embracing real estate the title to which was in the separate partners as tenants-in-common.    If this real estate is to be considered as the individual property of the partners, and not as copartnership property, the assignment of it, to pay the partnership debts, with a reservation of the surplus to the assignors, who were, at the same time, insolvent as to their separate concerns, was fraudulent as against their creditors.    This was the judgment of this court when the case came here after the first trial. (16 N. Y., 484.)    But, upon the second trial, which eventuated in the judgment under review, evidence was given touching the manner in which this real estate was acquired, and was held; and the question is, whether, upon the finding of the referee upon these subjects, the case was such as to warrant the application of the equitable principle which permits the separate partners, or the creditors of the copartnership, to require the sale and appropriation of its real estate for the liquidation of its affairs.    Where land is conveyed to two or more persons by a common deed of conveyance, they become tenants-in-common, and each is at law considered separately seised of his individual share, as fully as though they derived title under separate conveyances from different sources.    But if the tenants-in-common are at the same time copartners, and the land was purchased with partnership funds, and for partnership purposes, it is deemed in equity converted into personal property, and is liable to be administered as such in winding up the affairs of the firm; and it goes, moreover, to

the personal representative, and not to the heirs, of a deceased partner. (*Phillips* v. *Phillips*, 1 Mylne & Keene, 649, 663; *Broom* v. *Broom*, 3 id., 443; Bisset on Partnership, 56.) And I understand that the rule is the same as to the claims of creditors, if it be brought into the partnership by one of the partners for partnership use during the continuance of the concern, under an agreement that it should be considered partnership property; though, in this last case, the equitable conversion is not so absolute as that the personal representative would be entitled to the succession against the rights of the heir. (*Cookson* v. *Cookson*, 8 Sim., 529.) But suppose it be purchased with partnership funds or taken in payment of a partnership debt, but not to be adapted for employment nor actually used in the business of the partnership, but is yet to be kept on hand until the failure of the firm: is it applicable to the payment of partnership debts, or must it be applied to the payment of the debts of the individual partners, supposing them also to be insolvent? In *Randall* v. *Randall* (7 Sim., 271), it is held that the conversion of real estate into personal property in such a case must not take place so as to give the succession to the personal representatives of one of the partners who had died. Whether, if the firm and the partners had become insolvent, the creditors of the copartnership could have invoked that fiction of a court of equity against the creditors of an individual partner, does not appear to be distinctly settled in England. There is a class of cases in which it had been agreed, upon the formation of the copartnership or subsequently, to the effect that the real estate brought into the concern should be considered as partnership property. There, though the conversion is not absolute so as to change the succession from the real to the personal representatives, yet there is a qualified conversion so far as may be necessary for partnership objects; and the payment of partnership debts being one of the purposes of the partnership, the joint creditors have a right to call for its appropriation for the satisfaction of their demands. *Cookson* v. *Cookson*, just referred to, contained that feature; and it was conceded that, if there had

been partnership debts, the creditors could have subjected the land to their payment. Where the land was not purchased for partnership uses, and there was no agreement making it partnership property, and yet it was paid for out of the funds of the partnership or taken in the payment of debts due to it, the question between the two classes of creditors would be one of construction as to the intent of the partners in making the purchase. It might be that such a purchase would be made as an investment of realized profits. If, for instance, the purchase-price should be charged to the separate accounts of the partners, that would be an indication that it was considered by them an application of divided profits. If, on the other hand, the income should be carried into the books of the copartnership, or if the land itself should be included in the periodical inventories of stock in trade, there would be an inference, more or less strong, that it had been agreed to hold the estate as partnership property. Where neither of these features exist, I am of opinion that, according to the doctrine of the English courts, the land, though paid for out of partnership funds, would retain its original character of real estate, and would be considered as belonging to the several partners according to the legal title as determined by the conveyance. But, in a leading case in the late Court of Chancery, decided in 1847, the land was considered as converted for the purpose of subjecting it to the debts of the copartnership, upon the single fact that it had been conveyed to the copartners in payment of a firm debt. Lands were conveyed to the partners, Naylor & Sumner, by a debtor of the firm, in satisfaction of the debt. On winding up the affairs of the concern, Naylor was obliged to pay out of his own means to the creditors about five thousand dollars beyond his ratable proportion of the debts, and for this balance he recovered a judgment against Sumner in the Superior Court; but, by mistake, the judgment was never regularly docketed, as the Chancellor held. Subsequently, a judgment was recovered against Sumner by another party for an individual debt, and then the premises were sold upon a decree of foreclosure of a mortgage

older than either of the judgments, and the money was brought into court for distribution. Upon a reference, it was adjudged to belong to Naylor—one half of it as the owner of an undivided moiety of the premises, and the other half as the judgment-creditor of Sumner, the other tenant-in-common. On the hearing of exceptions to the report, a Vice-Chancellor confirmed it; and on an appeal to the Chancellor, he held that the distribution could not be sustained on the ground upon which it was placed by the Master, for he considered the imperfect docket wholly void. But he decided that, for the purpose of a liquidation of the copartnership affairs, the payment of its debts, and the division of the assets between the partners, the land was to be regarded as personal property; and he sustained the report on that single ground. The opinion is quite thorough, and it reviews all the cases on the subject, English and American; and the judgment appears to have been acquiesced in, as I do not find that it was brought before this court on appeal. It was not pretended that the land was purchased for, or that it was adapted to, the use of the firm in its business, or that there was any agreement that it should be considered as partnership property. Several of the cases referred to in support of the Chancellor's conclusion showed the additional fact that the land was purchased for partnership use, or that it had been agreed that it should be considered partnership property; but there being no such feature in the principal case, it is a direct authority for the position that it is enough that the purchase should have been made with partnership funds. (*Buchan* v. *Sumner*, 2 Barb. Ch., 165.)

In the present case, the finding of the referee is express to the effect that the three parcels of real estate were acquired " with copartnership effects in the collecting and receiving the debts due the said firm." It is also stated in it, that this land was a part of the copartnership property; but this should probably be considered as a legal conclusion, from the particular facts which are found. The referee also states that these parcels of land had always been inventoried and treated, and,

at the time of the assignment, were held, as a part of the partnership effects and property. This, I think, would be sufficient to sustain his conclusion upon what I have considered the doctrine of the English courts. But I am in favor of placing the case upon the rule established in *Buchan* v *Sumner*, because it was a well-considered judgment of the highest equity court of original jurisdiction under the former system, and has been taken as the law of the State for the last fifteen years. It was not, moreover, a departure from any adjudged case in this State. If it does not conform to the current of English adjudications, it establishes, I think, a better practical rule. It is, essentially, a question as to the *onus probandi*. Where the price of land conveyed to the partners is paid by copartnership money or effects, or it is taken in satisfaction of a debt due the concern, the real estate becomes partnership property, or is individual property, according to the legal effect of the conveyance, as the intention of the purchasers shall appear to have been. It may be either the one or the other. *Prima facie*, I should say that, where the land was taken in payment of a debt, it might be considered, in equity, as property of the same class as that which was parted with in making the purchase. So much of the undisputed property of the partnership has been exchanged for the land : it may possibly have been thus invested in order to pay a dividend to the several partners, to whom the land is conveyed; but the stronger probability would always be, in such a case, that it was taken as an expedient for collecting a debt. A conclusion which is to be adopted in the place of precise proof, should always be in favor of the theory which is the most probable; and it is upon this rule that the burden of proof is usually adjusted.

If the real estate included in the joint assignment was liable to be applied, in the first instance, to the payment of partnership debts, it was not unlawful to include it in the assignment to a trustee for the purpose of satisfying these debts.

The other objection to the joint assignment depended upon questions of fact, which have been settled against the plain-

tiffs, by the finding of the referee that it was executed in good faith and without fraud.

The report of the referee and the judgment of the Supreme Court condemn the separate assignment of George Caldwell as fraudulent and void, as against his creditors; but it is insisted on the part of the plaintiffs that the judgment is incomplete, because it does not contain a direction that Caldwell shall assign the property to a receiver. But I think that would not have been an appropriate direction under the circumstances of the case. The real estate embraced in that assignment had been mortgaged to the defendant Read; and that mortgage had been foreclosed, and the lands embraced therein, except the stone store, were purchased in by the mortgagee; and this stone store was subject to a prior mortgage to the commissioners of loans, upon the foreclosure of which it had been purchased by Read. Before these foreclosures had taken place, Mitchell, as assignee, had sold the equity of redemption. That sale was probably void, as the plaintiffs' counsel suggests, for having been made *pendente lite;* but this would not affect the title which was acquired under the foreclosure sales. The judgment declares the mortgage to Read free from fraud and valid. Whatever title, therefore, passed to Mitchell by the assignment, was extinguished by that foreclosure and sale, except as to the stone store; and Mitchell's title to that was cut off by the foreclosure of the mortgage to the commissioners of loans. Besides, the appropriate relief of the plaintiffs was granted to him. The assignment, which formed an impediment to their legal remedy, was declared null and void as against them; and they were free to enforce that remedy against the land, so far as the assignment was concerned. If the title, which the plaintiffs' debtors would otherwise have had, has been extinguished by the enforcement of other and valid incumbrances against it, that is a misfortune which they could not be relieved against.

It is also claimed by the plaintiffs' counsel that Mitchell should have been charged with some amount for the rents of the estate which passed under this assignment, from its exe-

Collumb *v.* Read.

cution until the assignee's title was extinguished· by the foreclosure. Assuming the assignment to be void, as the court has determined, I do not perceive how the plaintiffs, as judgment-creditors, would be entitled to the rent of the land until they had perfected their title to it by a sale on their execution, and had obtained a sheriff's deed. They had no title, and only a general lien. The debtor has made a fraudulent conveyance. The creditor had a right, if he chose, to sell on his execution, notwithstanding the conveyance; or he might, as he has done, bring an action to set aside, and have declared void, the impediment created by the conveyance. The result of success in such a suit is to uncover the land, so that he might not be embarrassed in case of his judgment against it. It is very plain that, until the commencement of the action, he had no lien, general or particular, against the rents and profits which had accrued, unless they existed in the hands of the debtor. If he had spent such rents for his own use, the plaintiff could not have recalled them. In point of fact, he had, by the·assignment, and by the act of the assignee, in paying them over according to the provisions of that instrument, exercised a right which he possessed respecting them. If the plaintiff and the other creditors had affirmed the assignment, the trustee would have been compelled to account for these rents, according to its provisions; but the plaintiff, claiming in hostility to it, must treat the trustee as a stranger, whose only fault has been in suffering himself to be made an instrument, by means of which the debtor has been enabled to apply the rents towards the payment of other creditors. (*Wakeman* v. *Grover*, 4 Paige, 23; *Ames* v.. *Blunt*, 5 id., 13; *Mills* v. *Argul*, 6 id., 577.) The moneys received since the commencement of the action seem to be only sufficient to pay the necessary expenses of taking care of and protecting the property; and there is no reason why the trustee should account for them.

The exception to the finding, by which the mortgage for· $8,275.10 was determined to be *bona fide*, does not raise any question of law. It is argued that it was necessarily fraudu-

lent, because the assignment of the mortgage, executed some
six weeks afterwards, and which has been adjudged fraudulent
and void, provided for any deficiency which might remain
of the mortgage debt.    But this by no means follows.    The
two instruments do not correspond in point of time or in
respect to the parties to them.    It would be strange if a
debtor could prejudice an honest debt which he had contracted,
or a valid security which he had executed, by including the
debt in a fraudulent transfer of property which he should
subsequently execute to a trustee for the payment of his
debts.    Nor is it, in law, conclusive evidence of fraud, that the
debtor, on the same day, executed a fraudulent security to the
same person.    The real estate mortgage, and the chattel mort-
gage of the furniture, both executed to the defendant Read,
bear the same date; and a debt of $800, the existence and *bona
fides* of which are affirmed by the report, were divided be-
tween the two securities, a part of the amount being included
in each.    We are not informed, by the findings of the referee,
on what grounds the chattel mortgage was decided to be
fraudulent.    It may have been, that the remote period fixed
for the payment of the debt mentioned in it, or that the want
of possession in the mortgagee for so long a period, were the
features which led to the condemnation of that instrument.
All which we are informed is, that it was not pronounced
fraudulent because the debt mentioned was not owing by the
mortgagor to the mortgagee; for the existence of the debt is
distinctly found.    It was not unlawful to secure the other part
of the debt of $800 by the mortgage of the real estate, if that
security was not objectionable for any other reason, and it is
found to be *bona fide*, and not infected with fraud.    I, by no
means deny that these several securities, and those which
were executed on the 17th of April following, were well
calculated to excite suspicion as to the integrity of the transac-
tions to which they relate.    As evidence, they were well
worthy of consideration; but I do not perceive that they
raised an inference of fraud, which was not capable of being
overcome by evidence of their intrinsic fairness and honesty.

Collumb *v.* Read.

It was for the referee and the Supreme Court, when sitting in review upon the facts, to determine upon the persuasive effect of the evidence.

A similar objection, of want of completeness, is taken to the judgment respecting the chattel mortgage, which was interposed in regard to that respecting the separate assignment of G. Caldwell. The defendant Read, as mortgagee, after the commencement of the action, caused the furniture to be sold on the mortgage, and became the purchaser for $418.30; and afterwards gave it, by bill of sale, to his daughter, the wife of Caldwell the mortgagor, in whose possession it was at the time of the judgment. I do not see anything in these transactions, even had they occurred before suit brought, to charge the mortgagee with any amount of money. The property has not been destroyed, or placed beyond the reach of the plaintiffs' executors. What was undertaken to be done by virtue of the mortgage, after suit brought, was simply void. The title to it is now in the receiver, whose duty it is to take possession of and sell it. If he is hindered in doing so, he is entitled to the ordinary remedies of one having a special property in chattels, and, perhaps, to the summary interposition of the court against George Caldwell. He was in possession of the property when he made the fraudulent assignment; and what was subsequently done, to confer a colorable possession upon his wife, was void. We think there was no error in the Supreme Court, in the manner in which this part of the case was disposed of.

No rule of law was violated, in the disposition which was made of the costs. They were in the discretion of the Supreme Court, with which we do not interfere.

The judgment appealed from must be affirmed.

All the judges concurring,

Judgment affirmed.