HIRSCHFIELD (UNITED STATES v.). See Case No. 15,372.

---

## Case No. 6,531.

### HISCOCK v. JAYCOX et al.

[12 N. B. R. (1875) 507.][1]

District Court, N. D. New York.

MARRIED WOMAN—DOWER—MORTGAGE—SUBROGATION—REAL ESTATE AS PARTNERSHIP ASSETS.

1. A feme covert, by charging her inchoate right of dower for her husband's benefit, does not thereby become a surety for him.

2. An agreement that a feme covert is to be compensated for a release of her contingent right of dower is not to be implied.

3. Where real estate is covered by a mortgage, the inchoate dower attaches to the equity of redemption only.

4. If the holder of a note the indorser of which is secured by a mortgage, proves the note as unsecured, this does not extinguish the mortgage, for the assignee is thereupon subrogated to the rights of the holder.

[Cited in Starks v. Curd, 88 Ky. 164, 10 S. W. 420.]

5. The intent to consider real estate partnership assets may be implied from the fact that the losses in the transaction are to be sustained by the assets of the firm, and the profits which may accrue are to augment the capital of the firm.

6. When real estate is impressed with the character of personalty, the onus is on the party who alleges that it has lost that character, to show, not only that the partnership creditors have been paid, but that, as between themselves, the accounts of the partners have been settled.

7. A feme covert is not entitled to dower in real estate which was held as partnership assets.

[This was a suit by Frank Hiscock, assignee, etc., against Mary C. Jaycox and Frances Green.]

Frank Hiscock and William C. Ruger, for assignee.

Geo. F. Comstock and A. H. Green, for defendants.

---

2 [From 1 N. B. R. 642 (Quarto, 195).]
1 [Reprinted by permission.]

WALLACE, District Judge. The complainant, as assignee in bankruptcy of Jaycox & Green, brings this action to determine the validity and extent of the rights of the defendants to dower in the real estate of the bankrupts. Of this real estate, the largest portion in value is alleged by the assignee to have been partnership assets of the bankrupts, as to which no dower interests exist; other portions belonged to the bankrupts individually; and a large part of that owned by the bankrupts jointly, and all of that owned by them individually, was, at the time of the filing of the petition in bankruptcy, subject to a mortgage, executed by Jaycox & Green and their wives, the defendants, to George F. Comstock, to secure him against liability as indorser for the firm upon negotiable paper made, or to be made, by them. At the time of the adjudication in bankruptcy Comstock was charged as indorser upon paper of the firm to the extent of ninety-five thousand dollars. After the adjudication, the holders of the notes indorsed by Comstock, and secured by the mortgage, proved them as unsecured claims against the bankrupt estate. Subsequently, upon the application of the assignee in bankruptcy, and upon notice to Comstock and the defendants in this action, the district court authorized the assignee to sell the real estate at public or at private sale, free from the lien of the mortgage, and discharged from the dower interests of the defendants, transferring such liens and interests to the fund to arise from the sale. Finally, upon the consent of Comstock and of the defendants, and with the approval of the court, the assignee conveyed the mortgaged real estate to Comstock, in satisfaction of a number of the notes which had been proved against the estate, thus relieving the estate from claims against it to the extent of sixty-three thousand dollars; and by the order sanctioning this conveyance, the rights of the defendants were transferred to and made a lien upon the general fund in the hands of the assignee.

Upon these facts, and others which will be adverted to hereafter, several questions arise, which may be most conveniently considered in the following order:

First. What is the character and extent of the defendants' rights, assuming that their dower interests attached to all the real estate? Under the stipulation of the parties the defendants are to be treated as though they were creditors of the bankrupts to the extent of their rights, and the amount due them is to be enforced as a lien on the fund in the hands of the assignee. It is insisted on their behalf, that inasmuch as their dower interests have been sold to satisfy their husbands' debts, they are entitled to be treated as sureties who have paid the debt of their principals, and permitted to enforce a lien for the full value of their original dower interests. To sustain this position, it is necessary to maintain that a wife who joins with her husband in a mortgage of his real estate, for his benefit, is, in respect to her inchoate dower interest, a surety for the husband. It has long been settled, that when a wife pledges her separate property for the husband's debt she becomes a surety in respect to the debt, and entitled to enforce all the rights of a surety; and it is not to be denied that her inchoate dower interest in her husband's lands is a valuable right, which may be the subject of a contract between her and a purchaser, that will be enforced for her separate benefit. Thus, a note given by a purchaser as a consideration to the wife for uniting with her husband in the conveyance of the husband's land to the purchaser, becomes her separate property. Nims v. Bigelow, 45 N. H. 343. It does not follow, however, that her dower interest is in such sense her separate property as that her contracts with her husband in regard to it are to be treated as those of a feme sole. No case has come under my observation, where an agreement between husband and wife, made upon the consideration of her release of dower to the husband, has, while executory, been enforced. In nearly all the cases a third person has intervened in the contract between the husband and wife (3 Paige, 440; [Sykes v. Chadwick] 18 Wall. [85 U. S.] 141), and in the others the agreement had been executed. The character of the interest is inconsistent with that of separate property. It is not the subject of grant or assignment; it originates in the husband's seizin, and she cannot, without the husband's consent, separate it from his estate in the land (Marvin v. Smith, 46 N. Y. 571); and it is not her separate estate within the meaning of the statutes which permit a married woman to deal with such estate as a feme sole (Sykes v. Chadwick, 18 Wall. [85 U. S.] 141–145). The proposition, that by charging it for her husband's benefit she becomes a surety for him, is not correct, because she does not thereby charge her separate estate. The relation, as between them, rests on the doctrine that she is as competent in equity to contract with her husband in reference to her separate estate as a feme sole is (Hudson v. Carmichael, Kay, 613), or, as expressed by Lord Camden (Earl of Kinnoul v. Money, 3 Swanst. 202): "As to the transaction the court regards the marriage as dissolved;" and hence the same implication arises between them as arises when a stranger pledges his property for another's debt. In the release of her dower, can it be said the court will regard the marriage as to that act dissolved, when the subject of the release is a right which not only owes its origin, but its future existence, to the marriage relation? But it is unnecessary to rest the denial of the proposition contended for upon technical reasoning. If it should be conceded that an agreement may be made between husband and wife, whereby she is to be compensated for a release of her dower,

such an agreement is not to be implied (Hall v. Hall, 2 McCord, Eq. 269); and her rights as surety when she mortgages her separate estate for the husband's debt, arise from the implied assumpsit which springs from the transaction. If there is no implied assumpsit there is no suretyship. If, by joining with her husband in a mortgage on his lands for his debt, the relation of principal and surety arises, she would be entitled to require his interest in the land to be first sold on the foreclosure; as in the case where she mortgages her own land for his debt she may require his interest as tenant by courtesy to be sold in the first instance. Neimcewicz v. Gahn, 3 Paige, 614. The exercise of this right would introduce an innovation in foreclosure sales, and would defeat the main object for which, according to common understanding, the wife joins in the execution of the husband's mortgage, viz., in order that a perfect title may be obtained if it becomes necessary to foreclose. In conclusion, the fact that the doctrine now contended for on behalf of the defendants has never been advanced in any of the adjudicated cases is of itself a cogent argument against its existence.

It follows, that the rights of the defendants were, at the time the real estate vested in the assignee, simply those of inchoate dower interests. So far as they relate to the real estate covered by the mortgage to Comstock, these interests were, in the most liberal view of inchoate dower interests, in the equity of redemption only; the surplus standing in the place of the land after enough has been carved out to pay the mortgage debt.

Second. It is insisted for the defendants, that the mortgage to Comstock has been extinguished by force of the proceedings had in bankruptcy subsequent to the adjudication, and consequently that their dower interests attach to the entire proceeds of the land mortgaged. This argument proceeds upon the assumption, that when the holders of the notes secured by the mortgage proved the notes as unsecured debts against the estate in bankruptcy, as to them the mortgage was extinguished; and while it may have been kept on foot to protect Comstock as indorser for such sum as he might be called on to pay upon the notes, when the land was conveyed to him, the mortgage was extinguished as to him. The argument is inconclusive, because, if the premises are correct, it does not follow that the mortgage has ever been extinguished as to the assignee. If the owners of the notes were in equity the owners of the mortgage, by proving their notes as unsecured debts their lien was transferred to the assignee. When the assignee's title vested in the real estate of the bankrupts, the land mortgaged was, as between the assignee and the owners of the mortgage, the primary fund for the payment of the mortgage debt. The owners of the mortgage had no right to call on the general estate in bankruptcy for the payment of the mortgage debt; they could not be admitted as creditors, except for the balance of their debt after deducting the value of their lien. This being so, if the assignee, instead of permitting the owners of the notes to prove them against the general estate, had taken the funds in his hands and paid the holders of the notes in full, he would not have thereby extinguished the mortgage, but the payment would have been deemed in equity a purchase. The general estate, being secondarily liable, would have been substituted in equity to the mortgage security, when its funds were appropriated to the payment of the mortgage debt, for which, as against the general creditors, the land was the primary fund. Where, as in the present case, the payment was not voluntary by the assignee, equity imperatively demands that he should be substituted in the security held by the owners of the notes. The owners of the notes having two funds—the mortgaged property and the estate in bankruptcy—while the general creditors, whom the assignee represents, had but one, have resorted exclusively to that one to which alone the assignee could resort; and upon familar doctrine in such case the latter is entitled to be substituted in the rights of the former, and the mortgage is deemed alive for all the purposes of the assignee's protection. Hunt v. Townsend, 4 Sandf. Ch. 510; Besley v. Lawrence, 11 Paige, 581; Eddy v. Traver, 6 Paige, 521.

I have thus far considered the question without reference to the cases which hold, that by the terms of the bankrupt act [of 1867 (14 Stat. 517)], when a secured debtor proves his debt as unsecured, such proof operates as a relinquishment of the security to the assignee. Without questioning the correctness of these decisions, I prefer to rest my conclusions upon the general principles of equity jurisprudence, which are applied, in all their vigor, in the marshaling of assets and the administration of estates in bankruptcy. If, at the time the real estate was sold, the assignee was the equitable owner of the mortgage to the extent that the holders of the notes would have owned it if they had not proved their notes, Comstock certainly the owner of any remaining interest in the mortgage. The mortgage then was an existing security to the full extent of the mortgage debt. The sale did not change the rights of the parties; it merely transformed the land into money, leaving the rights of all parties precisely as they were before. The lien of the mortgage being the first on the land became the first on the fund, and the rights of the defendants do not attach to it, until enough has been realized from it to satisfy the mortgage. As it is conceded that only about seventy thousand dollars was realized from the sale of the real estate in bankruptcy, while the paper for which the mortgage was security, and on which Comstock was charged as indorser,

was of larger amount, it follows that the defendants have no interest in the land covered by the mortgage to be enforced as a lien upon the general fund.

Third. It remains to determine whether certain real estate not covered by the Comstock mortgage was subject to dower interests of the defendants. It is insisted for complainant, that this real estate was partnership assets of the bankrupts, and inasmuch as the partnership accounts and debts have never been settled, no dower interests have attached. Jaycox & Green became partners in 1851 as dealers in merchandise. In 1853-4 they purchased jointly the real estate in question now, taking conveyances upon the face to themselves as tenants in common. Of this real estate one portion was purchased partly with individual funds, and partly with funds of the firm; it was bought upon speculation, to be subdivided and sold; money was advanced from firm funds to purchasers for the building of houses; the proceeds of sales were paid into the funds of the firm, and used in their business, and any losses that might occur were to be sustained by firm funds; a large portion of this is now held under contracts by purchasers, for which deeds have not been executed. Another portion was purchased to secure a debt owing to the firm, the firm paying its funds for the remaining consideration money. After these purchases, the firm was reorganized by the introduction of new members, at which time the assets of the new firm were inventoried, and the real estate was not included in the inventory. Moneys received from sales and for rent of the real estate were paid into the new firm, and credited on the books to the old firm. None of the real estate now under consideration was used in the mercantile business of the original firm, or of the new firm. The second firm was reorganized, and a third formed, and this was reorganized, and a fourth formed; during these changes Jaycox & Green remained members of each firm, and at the dissolution of the fourth firm its assets were transferred to them, and they continued sole partners until their bankruptcy. The debts of each firm, except those of the bankrupt firm, have been paid in full. It does not appear whether or not the accounts of the partners have been paid, or adjusted as between themselves.

Upon these facts, which are all that I deem material, the question arises whether the real estate was, at any time, partnership assets; and if so, whether it has, at any time, ceased to be such, so that the dower rights of the wives attached. Where real estate is purchased by partners with partnership funds, from the moment of its acquisition it is impressed with the trusts created by the intention of the parties in respect to the purchase; and will be regarded in equity, as realty, or as personalty, according to the intention of the purchasers. If the purchasers

intended that the real estate should be used or held for the purposes of the partnership, it will be deemed in equity partnership assets. The intent may be implied from the subsequent acts of the parties in regard to the subject of the purchase. And it will be presumed that the parties intended to treat the real estate as partnership assets, if it was subsequently subjected to the uses of the partnership business. But, according to the weight of authority, the mere fact that the purchase was made with firm funds will not render the land partnership property; but such a purchase will simply give rise to a resulting trust, under which the parties will prima facie take equal moieties, unless it appears that they contributed unequally to the consideration. These propositions are clear upon the authorities.

But this case presents a feature which is exceptional, and a question which is not clear upon the authorities. The real estate, though purchased with the funds of the firm, was not purchased for the mercantile business of the partners; but it was purchased as a speculation, in which the capital was to be derived from, and the losses were to be sustained by, the assets of the mercantile firm, and the profits which might accrue were to augment the capital of the mercantile firm. Is not the intent of the partners to consider the real estate partnership assets, as clearly to be implied from these facts, as it would be if it appeared that subsequent to the purchase they used the real estate corporeally for partnership purposes? I think it is.

Were it not for the statute of frauds, it would be competent for the parties to a purchase of real estate, to impress the real estate with any trust as to its disposition which they might desire, and to do so by parol agreement. The doctrine of resulting trusts is invoked to escape the operation of the statute, where the purchase is made with joint funds; in which case, as the trust is implied, it is not within those which by the statute must be declared or manifested in writing; and it may be shown by parol. Suppose a case, then, where two contribute in equal proportions to a purchase of real estate, upon the verbal agreement that it shall be sold and the proceeds invested in a mercantile business in which the parties are engaged, and subjected to the losses that may arise in that business. Is there any reason, when the trust arises by the investment of joint funds, and may be shown by parol proof, why the extent and incidents of the trust may not also be shown by parol? Where a mercantile firm purchases for mercantile uses, it is competent to show by parol the interests of the respective partners, and the state of the firm indebtedness, in order to define the extent of the trust which such a purchase impresses on the land. If the objection, in the case supposed. rests upon the interdiction of the statute of frauds, it

would equally apply in the case of a purchase by a mercantile firm. As said in the note to Dyer v. Dyer, 1 White & T. Lead. Cas. Eq. 348: "When it is once settled that payment of the purchase money raises an equity and a trust which override the deed, the practice in reason and conscience ought to be, to admit all legal evidence that can explain, define, and determine the equity." If such evidence is competent, then the proof here that the parties purchased the real estate in question to deal with it as a commodity, and to subject its proceeds to the contingencies of their mercantile business, fastened a trust upon the real estate commensurate with that intention. And upon principle, where two persons purchase real estate with joint funds, intending to deal with it as a commodity, and to share the profits or loss which may arise after it is converted into money, they are partners as to the transaction, and their intention to treat the real estate as personalty, converts it into personalty in equity, until the purposes of the partnership have been fulfilled. By the statutes of this state relating to trusts, an implied trust is not permitted to arise from the payment of joint funds, where, by the agreement of the parties, the conveyance is taken in the name of one of them only; but, with this exception, there is no reason why equity should not enforce the intention of joint purchasers with joint funds to deal with the real estate purchased as personalty, and impress upon it the partnership trusts with the parties contemplated. The cases of Ludlow v. Cooper, 4 Ohio St. 1, and Kramer v. Arthurs, 7 Barr [7 Pa.] 165, countenance this conclusion.

These views must control the rights of the parties as to that portion of the real estate in question which was purchased in part with individual funds, and in part with the firm funds of the bankrupts, upon speculation, to be subdivided, sold, and the profits or losses divided between them. As it was not used, or designed to be used, for their mercantile business, the fact that it was bought in part with individual and in part with firm funds, would not, according to the weight of authority, in the absence of other evidence, imply their intention to consider it as firm assets. But their intention to deal with it as personalty, and as partners, is clearly established; and this court must regard it as personalty until the satisfaction of all the trusts which have been impressed upon it.

As to that portion of the other real estate, which was purchased in part to secure a firm debt, and in part with firm funds, upon the authority of Buchan v. Sumner, 2 Barb. Ch. 165, which is approved in Collumb v. Read, 24 N. Y. 505, I should have no hesitation in holding it to be partnership property, were it not that here the firm debt was but a part

of the consideration, and not the whole, as in Buchan v. Sumner; and the payment of the balance with firm funds, in the absence of any intent to use the land for the mercantile business, of itself would not indicate the intent of the purchasers to constitute it partnership assets. It appears, however, that the rent received from this real estate was credited in the firm accounts in the same manner that moneys arising from the mercantile debts of the original firm were credited; and in view of the fact that real estate speculations of the firm were frequent and extensive, it may fairly be assumed that they regarded themselves as partners in all the transactions where they purchased together.

As the real estate in question was impressed with the character of personalty, the onus is on the party who alleges that it has lost that character, to show, not only that the creditors of the partners have been paid, but that as between themselves the accounts of the partners have been settled. Until this has been done the land remains partnership assets. Dyer v. Clark, 46 Mass. [5 Metc.] 562; Goodburn v. Stevens, 1 Md. Ch. 420; Tillinghast v. Champlin, 4 R. I. 173–207; Buchan v. Sumner, 2 Barb. Ch. 165. If it appeared that the accounts between the partners had been satisfied, the real estate would have resumed its original character as realty, and the dower interests of defendants would have attached; and the debts of the new firm could not be satisfied from the real estate to the prejudice of the dower interests.

It only remains to consider the rights of the defendants as to the real estate described in Schedule I, annexed to the bill. As to this, there is nothing to show that it was to be held by the bankrupts otherwise than as tenants in common with Allen Munroe; it does not appear that it was purchased with joint funds, and the defendants' dower interests attached to it. A decree is directed, that the defendants have neither of them any claim against the bankrupt estate, or any lien on the fund in the hands of the assignee, aside from the value of their respective dower interests in the real estate described in Schedule I, annexed to the bill. And it is referred to D. F. Gott. Esq., register in bankruptcy, as master pro hac vice, to compute and report the sum due defendants by reason of such interests. Upon the coming in of his report, the decree will be settled upon three days' notice by either party, and the question of costs is reserved until that time.

[For other cases treating of rights of creditors whose claims are secured by mortgage, see In re Jaycox and Green, Cases Nos. 7,240 and 7,242.]