### RICKETTS v. MURRAY et al.

(Circuit Court of Appeals, Seventh Circuit. May 4, 1896.)

No. 269.

MORTGAGE TO INDIVIDUAL—TRUST IN FAVOR OF FIRM—PAROL PROOF.

Where a bond and mortgage have been made payable to one individually, who is a member of a firm, and there is ample proof of sufficient consideration as well as motive for their being so drawn, it is only upon very clear and convincing proof that the assertion of a trust in favor of the firm, of which there is no trace in those instruments or in any other writing, should be allowed to prevail.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Chas. Rushmore, for appellant.
Wm. George, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The appellees, Robert I. Murray, Richard F. Pearsall, and Effingham C. Haight, as executors of the will of Charles Haight, brought this suit to foreclose a mortgage on real estate executed on the 28th day of May, A. D. 1880, by Alfred A. Freeman to secure the payment to Charles Haight, since deceased, of the sum of $75,000, in accordance with the terms of a penal bond for double that amount executed by the mortgagor to the mortgagee. The appellant, William H. Ricketts, as receiver of the assets of Charles Haight & Co., upon leave to intervene in the suit, filed an answer to the effect that the mortgage was executed to secure an indebtedness of Freeman & Ruyter to Charles Haight & Co., and upon no other consideration; that it was made payable to Charles Haight in trust for the firm, of which he was a member, and therefore was an asset of which, as receiver, the intervener was entitled to possession and control,—concluding with an affirmative prayer that the intervener be declared to be the owner and entitled to possession of the bond and mortgage, and that the other parties to the

action, some of whom were also interveners who had filed cross bills attacking the validity of the mortgage as having been made in fraud of the creditors of Freeman & Ruyter, be declared to have no right, title, or interest therein. There was a finding and decree in favor of the appellees against all other parties, but the appellant alone prayed an appeal, without showing a refusal of other parties to join therein, and without an order of severance. See Estis v. Trabue, 128 U. S. 225, 9 Sup. Ct. 58; Dolan v. Jennings, 139 U. S. 385, 11 Sup. Ct. 584.

On the authority of Collumb v. Read, 24 N. Y. 505; Riddle v. Whitehill, 135 U. S. 621, 10 Sup. Ct. 924, and other cases, it has been urged that in certain particulars the burden of proof was upon the appellees; but, upon the view which we take of the facts, the cases are not applicable, and if they were the result would not be different, because the decree rendered is supported by a preponderance of the evidence so clear and unmistakable as to make unimportant any question of the burden of proof. It would serve no good purpose to attempt a full presentation and analysis of the evidence, which, in so far as it is not documentary, consists in the testimony of conflicting witnesses, who are evenly balanced in numbers, and, upon the most favorable view to the appellant, evenly balanced in credibility and weight. The written evidence and undisputed circumstances leave no room for reasonable doubt where lies the truth. The firm of Charles Haight & Co., composed of Charles Haight, Alfred A. Freeman, Henry Koper, and Albert I. Freeman, was formed September 1, 1885, and, by its articles of copartnership, was to continue for five years from that date in the business of "buying and selling flour, and selling flour on commission," in the city of New York. Alfred A. Freeman was at the same time a member of two independent firms, namely, A. A. Freeman & Co., millers at La Crosse, and Freeman & Ruyter, millers at River Falls, Wis. These firms sold their flour through Charles Haight & Co., and, by reason of advances received from time to time, each became largely indebted to that firm, and in order to secure its liability the firm of A. A. Freeman & Co., in the year 1885, executed a mortgage upon its property at La Crosse to the individual members of Charles Haight & Co., excepting Alfred A. Freeman, who, being a mortgagor, was not named as a mortgagee. In 1887 Albert I. Freeman died, but the business of Charles Haight & Co. was kept going by the surviving partners. Charles Haight, besides his contribution of $50,000 to the capital invested, loaned the firm money and securities to a large amount, for which in 1889 he was demanding security; and to that end, in December, a contract and mortgage, to be executed by Alfred A. Freeman, were drawn, but were not signed. In May, 1890, an understanding was reached whereby the partnership was to be extended for another term of five years; Effingham M. Cock, who afterwards changed his name to Haight, being admitted to membership at the instance of his uncle Charles, who promised to make a further investment of $20,000 in the business, and to make additional loans if required. As a result of these negotiations the bond and mortgage in question were executed, the acknowledgment being

dated May 28, 1890, and the new partnership agreement, bearing date June 5, 1890, was signed. On July 28, 1890, after making further loans to the firm exceeding $30,000, Charles Haight died at his home, in New York City, where his executors were appointed. The survivors continued the business of the firm until June 8, 1891, when an assignment for the benefit of creditors was made; but in March, 1893, the supreme court, sitting at New York, vacated the assignment, and appointed the appellant, Ricketts, receiver of the property of the firm.

Two witnesses (Freeman, the mortgagor, and Henry Koper, member of the firm) have testified to the effect that the mortgage was intended solely to secure the debt of Freeman & Ruyter to Charles Haight & Co. Two others, who had at least equal knowledge of the facts, have testified that an individual security to Haight for his loans to the firm was intended. The circumstances and probabilities of the situation corroborate the latter view, and the documentary evidence, the bond and mortgage themselves, and other writings, exclude all reasonable doubt about it. Freeman's situation was such as to compel his acquiescence in the demands of Haight. The unsigned contract which was prepared in December, 1890, demonstrates that an individual security was then contemplated. The bond and mortgage then prepared were afterwards executed without change in their terms, and, that having been done, there was no longer, on the part of Haight, any necessity for insisting that the contract, which had been drawn at the same time with the bond and mortgage, should be executed. The second contract of partnership, like the first, bound the members of the firm, except Haight, to assume and pay, and to indemnify Haight against, all losses and debts of the firm; and it follows that by executing the bond and mortgage to Haight, for his individual benefit, Freeman assumed no new or additional personal liability. It is to be observed, too, that in the twelfth article of the agreement of June 5, 1890, express reference is made to the debt of A. A. Freeman & Co., and to that of Freeman & Ruyter; the former being described as "secured by a mortgage on certain mill property at La Crosse," and the other simply as "due from the firm of Freeman & Ruyter." If the contention of the appellant were true, that the mortgage in suit was given as a security for the latter debt, why was it also not described as secured by mortgage? Another circumstance, which, unexplained, is significant, is that the debt of Freeman & Ruyter to Charles Haight & Co. was, and for a long time had been, for a much larger sum than $75,000, and at the date of the mortgage was for more than twice that amount. If, therefore, the security had been intended for that debt, presumably it would have been made to cover the whole of it. If, as has been urged, there was trouble with the representatives of Albert I. Freeman because the mortgage upon the La Crosse property did not show upon its face the trust in favor of Charles Haight & Co., the greater the improbability that the second mortgage would be made to Haight alone without expressing the trust, if a trust was intended. The bond and mortgage being in terms payable to Charles Haight personally, and there being ample

proof of sufficient consideration as well as motive for their being so drawn, it is only upon very clear and convincing proof that the assertion of a trust, of which there is no trace in those instruments or in any other writing, should be allowed to prevail. The decree below is affirmed.