HUNT v. WEINER ET AL.

1. FRAUDULENT CONVEYANCE: *When creditor may sue to set aside.*
Upon the return of *nulla bona* upon an execution from a Justice of the Peace, the plaintiff may file his bill in equity to set aside a fraudulent conveyance of personal property by the judgment debtor, if he own no lands.

2. JURISDICTION: *In chancery to remove obstructions to legal process.*
Where a creditor has a lien for his debt (e. q. on land by judgment, or on personal property by issuing execution), and the debtor interposes a fraudulent incumbrance, or transfer, which obstructs and embarrasses the legal remedy and prevents a sale at a fair price, there, equity will aid the legal right by removing the obstruction, and enable the creditor to obtain a full price for the property.

3. EVIDENCE: *Officer's return of nulla bona, conclusive.*
An officer's return of *nulla bona* is conclusive evidence that the judgment debtor had no property in his bailiwick. The court will not entertain inquiries as to his diligence in seeking property to levy on. If the return be false, the law furnishes the injured party ample remedy.

4. ASSIGNMENT: *Fraudulent: Assignees chargeable with notice, etc.*
The assignees in a fraudulent assignment are chargeable with notice of its contents, and must be deemed cognizant of, and participators in, the unlawful object.

5. PARTIES: *In actions to set aside fraudulent conveyances.*
In a suit in equity to cancel a fraudulent assignment, upon the ground that the assignee holds the assignor's property under an illegal assignment, only the assignor and assignee need be made defendants; but if the plaintiff seeks to enforce the assignment and obtain a share of the trust funds, assailing the *bona fides* of some of the secured debts, he must make all the creditors parties whose debts are specifically provided for.

Hunt v. Weiner et al.

6. ASSIGNEES: *Their rights where assignment set aside.*

When an assignment is found to be fraudulent by reason of some provision in it, it is set aside entirely, and the trustees, though creditors, can not retain any part of the property to pay themselves, but must account for all that came into their hands under the assignment. If, however, they have made any payments to the beneficiaries, in pursuance of the deed, before any creditor had obtained a lien on the property, they can not be compelled to account a second time for money so paid.

7. SAME: *Same.*

As to charges, commissions, and expenses of converting goods into cash under an illegal assignment, the assignees will not be allowed for any services or disbursements except such as were necessary for the preservation of the property; and these will not include premiums paid for insurance. The assignees, in disposing of the illegally-assigned goods, at least after bill filed against them assailing the assignment, are tortfeasors, and trustees of their own wrong, and will not be allowed to consume the goods in expenses that should not be incurred.

APPEAL from *Sebastian* Circuit Court.

Hon. J. H. ROGERS, Circuit Judge.

*William Walker*, for appellant:

1. There had not and could not have been a return of *nulla bona* on plaintiff's execution. *Meux v. Anthony, 11 Ark., 411; Sale v. McLean, 29 ib.; Clark v. Anthony, 3 ib.*

2. Plaintiff's remedy was adequate at law. *Field v. Jones, 10 Ga., 229; Latham v. Barton, 6 Blackf., 97; Mill. R. F. A. v. Clayton, 9 Allen, 101; Freeman on Judgments, sec. 426; Bump on Fraud. Convey., p. 524.*

3. The trustees, who were creditors, were not shown to have participated in or had any knowledge of the fraudulent purpose of the grantor. *Cornish v. Dews, 18 Ark., —; Mandel v. Peavy, 20 ib., 325; Erb v. Cole, 31 ib., —.*

4. All the creditors were necessary parties. *Burr. on Assignments, sec. 504.*

5. The conveyance was a mortgage, and not an assignment. *1 Jones on Mortg., sec. 69; Hilliard on Mortg., —; Wait's Actions and Def., p. 515; Burrill on Assign., 3d ed., 7,* and cases cited; *5 Ohio St., 124; 36 Barb., 627; 1 Rand. (Va.), 304; 13 N. H., 298; 8 ib., 536; 10 Paige, 445, 448, 461; 4 Watts & S., 383, 391; 2 Hilliard on Mort., 514; The United States v. McClellan, 3 Sumn., 345, 354, 355; Burrill on Assign., sec. 8, p. 19.*

6. The filing of the inventory, or bond, is not a condition precedent. *R. R. v. Collins, 57 N. Y., 941; Thrasher v. Bently, 59 ib., 649; Abb. N. Cases, p. 39, 47; Burr. on Assign., p. 532, note; Wright v. Thomas, U. S. Ct. Ct., Ind., Reporter of May 26, 1880;* and a non-compliance does not render the assignment void. *Nat. Bk. v. Matthews, 8 Otto, 521; Harris v. Russell, 12 How., 79.*

7. On the question of fraud, see *Burrill on Assign., 3d. ed., p. 487; Bump on Fraud. Convey., 369; 1 Sandf. Chy., 476; 18 Ark., 123; 40 N. Y., 221; 6 Iowa, 61-8; ib., 239; 65 Penn., 262; 12 Ark., 302; 6 Fla., 62, 102; 3 Mich., 309; 7 Ind., 17; 5 Ohio, 121; Burr. on Assign., 450; Bump on Fr. Conv., 377-9.*

8. The time limited for closing the trust was not unreasonable. *Dana v. Bank, 5 W. & S. (Penn.), 223; Burr. on Assign., 493; Bump on Fraud. Conv., 385.*

9. Hunt should have been allowed his debt and disbursements. *Bump on Fr. Conv., 574; Clements v. Moore, 6 Wall., S. C., 312; 11 Wall., S. C., 615; Tabb v. Williams, 7 Humph., 367; Peacock v. Tomkins, Meigs, 317.*

*Clendenning & Sandels,* for appellant:

1. No return of the executions *nulla bona* was necessary. A judgment and the *lien* acquired was sufficient. *54 Miss., 79; Freeman on Ex., 430; Bump on Fr. Conv., 518, 524; Moak's Vansantvoord's Pleading, 318; Hege v. Bolles, 33 How., 266.*

Hunt v. Weiner et al.

2.   The instrument was an assignment, and not a mortgage.  (*Hoffman v. Mackall, 5 Ohio St., 124; Crittenden v. Johnson, 11 Ark., 94; Burrell on Assignments, —.*)  And, being such, was void.  (*Raleigh v. Griffith, 37 Ark., —.*)  The assignees were chargeable with notice of what their deed contained, whether they participated in the fraud or not.

3.   The trustees are entitled to credit for proper disbursements before the filing of the bill (*4 Paige, 73; 5 Paige, 13; 6 Barb., 470; 24 N. Y., 505*), but not afterwards.

SMITH, J.   This was a creditor's bill, involving the validity of the assignment heretofore considered in *Teah v. Roth* and *Falconer v. Hunt.*  The assignment was made February 19, 1879, by Amanda Teah and Abram Teah. And on the twelfth of April, 1879, two of her unsatisfied judgment-creditors filed the present bill, in behalf of themselves and all others in like condition, for the purpose of uncovering the assets locked up by the assignment, and subjecting them to the satisfaction of their debts.

In the progress of the cause, two other firms (one preferred in the assignment), who had recovered judgments against Mrs. Teah, and had failed to obtain satisfaction, filed their petitions to intervene as co-plaintiffs, and were admitted to join.

The bill alleged that the plaintiffs had severally obtained judgments against Mrs. Teah before a Justice of the Peace; had sued out final process thereon, which had been returned "no property found;" had then filed transcripts of their judgments in the office of the Clerk of the Circuit Court of the county in which they had been rendered, and caused the same to be docketed, and had taken out executions upon such docketed judgments, which were in the hands of the Sheriff at the time of filing the bill; that Mrs. Teah

1.  FRAUDULENT CONVEYANCE: When creditor may sue to set aside.

had executed this assignment, ostensibly, for the purpose of securing certain debts therein specified, but in reality for the purpose of hindering, delaying and defrauding her other creditors; that she owned no real estate and no other personal property except that mentioned in the deed of assignment, and a quantity of furniture, etc., of the value of $1,000, and this last she so effectually concealed that the officers of the law were unable to find it; and that the assignees had filed no bond nor inventory. And it was prayed that the assignment might be canceled; that the assignees might be held to account for what they had received, and be restrained from further selling or inter-meddling with the goods; that a receiver might be appointed to take charge of the assigned property; that the plaintiffs' demands might be paid out of the fund thus produced, and they be relieved generally.

The plaintiffs were met by a general demurrer, for want of any sufficient showing to entitle them to equitable relief, and specially because it did not appear that they had exhausted their legal remedies. The demurrer was overruled, and it is now insisted that it ought to have been sustained because there had been no return of "*nulla bona*" upon the plaintiff's executions.

Of this objection it is sufficient to say that it is not true in point of fact. The executions issued by the justice had been so returned, and if the debtor owned no land, plaintiff might invoke the assistance of equity. *Freeman on Executions, section 427*, and cases cited in note 4.

2. JURIS-DICTION: In chancery, to remove obstructions to legal process. But it may well be doubted whether this case belongs to that class where a return of "*nulla bona*" is necessary to enable a creditor to attach a fraudulent conveyance. The general rule undoubtedly is, that a court of chancery will not interfere in aid of the collection of a debt while a remedy at law exists. But there are exceptions, as well

established as the rule itself. One of the exceptions is the case of a creditor who has a lien for his debt (e. q. on real estate by judgment, or on personal property by suing out execution), and his debtor interposes a fraudulent incumbrance or transfer, which obstructs and embarrasses the pursuit of the legal remedy, thus preventing a sale at a fair valuation. There equity will aid the legal right by removing the obstruction, and enable the creditor to obtain a full price for the property. *Jones v. Green, 1 Wall., 330,* and cases there cited; *Case v. Beauregard, 101 U. S., 688; Fleming v. Grafton, 54 Miss., 79; Freeman on Ex.,* sections *426–30.*

Here plaintiffs had acquired a lien upon the goods by placing an execution in the hands of the Sheriff. And a return upon the execution might have defeated the purpose of the suit by extinguishing that lien and remitting them to the later lien, springing from the filing of the bill and the service of process. *Forbes v. Logan, 4 Bosw., 475; Watrous v. Lathrop, 4 Sandf., 700; Hayes v. Bolles, 33 How. Practice R., 266.*

A second objection was, that the bill showed the debtor had sufficient personal property liable to be taken in execution, and not included in the assailed conveyance, to satisfy plaintiffs' judgments. The officer's return is the highest evidence that she had not such property within his township, and "from the embarrassments which would attend any other rule, the return is held conclusive. The court will not entertain inquiries as to the diligence of the officer in endeavoring to find property upon which to levy. If the return be false, the law furnishes to the injured party ample remedy." *Jones v. Green, supra.*

3. EVIDENCE Officer's return of *nulla bona* conclusive.

It was further objected that the bill did not aver that the assignees had any knowledge of or complicity in the fraudulent purposes of their assignor. Perhaps the rule which requires the grantee to participate in the fraud, in

4. ASSIGNMENT: Fraudulent assignees chargeable with notice of the fraud.

order to avoid the deed, has no just application, except in case of purchasers, or persons who have parted with some valuable thing or right. But be this as it may, the provisions of this deed were such that, if carried out according to their apparent and reasonable intent, they would have operated as a fraud upon the unsecured creditors, and perhaps also, as the sequel proved, upon those who were intended to be benefited. The assignees are chargeable with notice of the contents of the instrument under which they claim, and must be deemed cognizant of and participators in the unlawful object. *Halsey v. Whitney*, 4 *Mason*, 230; *Hyslop v. Clark*, 14 *Johns.*, 458; *Harris v. Sumner*, 2 *Pick.*, 129.

5. PARTIES: In actions to set aside fraudulent conveyances.

Finally, it was said the creditors whose debts were provided for in the assignment, were not before the court. They were not necessary parties. The distinction seems to be this : A creditor who acts in hostility to the assignment and seeks to set it aside on the ground that the assignee endeavors to retain the debtor's property under an illegal assignment, needs only to proceed against the assignor and assignee. If, however, he seeks to carry the assignment into effect, and to obtain, his share in the distribution of the trust fund, assailing the deed upon the ground that the debts of some of the *cestuis que trust* are simulated, he must join as defendants all whose debts are specifically provided for. *Wakeman v. Goover*, 4 *Paige*, 23; *Rogers v. Rogers*, 3 *ib.*, 379; *Russell v. Lasher*, 4 *Barb. S. C.*, 232; *Billups v. Sears*, 5 *Grattan*, 31; *Burrill on Assignments*, 2d ed., 599.

Hunt alone answered the bill. On the seventh of February, 1880, a receiver was appointed with the consent of the defendants. And upon final hearing the deed was declared to be fraudulent, and judgment was rendered and execution awarded in favor of the receiver against the

assignees for $1,227.27, being the gross proceeds of sales, after deducting taxes, made by the assignees from the date of assignment, until the receiver took charge.

Hunt has appealed, and now contends that he should have received credit for his disbursements and have been allowed to retain his own debt, he being the largest of the preferred creditors, out of the proceeds of the sale of the goods.

It appears from Hunt's own deposition that the assignees never filed bond nor inventory before or after entering upon the duties of their trust. He employed his co-trustee, Abram Teah, doubtless a relative of the creator of the trust, at a salary of $75 a month, and Frank Bollinger, his own clerk, at a salary of $30 a month, to conduct the business. They sold to the general public for cash, but to some of their neighbors on a short credit. The rent of the storehouse from February 21, to April 30, 1879, was $45 a month; what it was during the summer months is not shown. Shortly after the assignment, Hunt, who was a merchant himself, moved his stock of groceries into the same storehouse. After a few weeks, Abram Teah left, and Hunt then employed in his place B. Teah, the husband of the assignor, at a salary of $70 a month. Hunt carried on the business from February 20 to October 1, 1879. The proceeds of sale were $1,303.45, and the expenses $1,274.20, leaving $29.25 for distribution to preferred creditors.

When an assignment is found to be fraudulent, by reason of some particular provision in it, it is set aside entirely, and trustees, though creditors, are not permitted to retain any part of the property for the purpose of paying themselves, but are required to account for all that came into their hands under the assignment. If, however, these assignees had made any payments to the beneficiaries, in

6. ASSIGN-EES:
Their rights where assignment vacated.

pursuance of the deed, before any creditor had obtained a lien, they could not be compelled to account a second time for moneys so paid. *Riggs v. Murray, 2 Johns. Ch., 565 ; Ames v. Blunt, 5 Paige, 13, 20 ; Wakeman v. Grover, 4 ib, 23 ; Haggerty v. Palmer, 6 Johns. Ch., 438 ; Collumb v. Read, 24 N. Y., 515.*

What expenses allowed.  As respects charges, commissions and the expenses of converting the goods into cash, the assignees will not be allowed for any services or disbursements except such as were rendered or incurred in the preservation of the property. And this will not include premiums paid to underwriters for insurance, inasmuch as any policies they may have taken out would be payable to the beneficiaries under the assignment, and, in the event of loss, would not have inured to the benefit of the plaintiffs or of the general creditors. In disposing of the goods, at least after the bill was filed, they were tort-feasors and trustees of their own wrong, and they will not be permitted to consume the estate in expenses that should never have been incurred.

It was an obvious irregularity to render judgment in favor of the receiver. He was not a party to the suit, but only the arm of the court. *Atkins v. Guice, 21 Ark., 164.*

The decree of the court below, in so far as it adjudges the deed of assignment to be fraudulent and void and gives costs to the plaintiff, is affirmed; in other respects it is reversed and remanded for a reference to the Master to take an account of the proceeds of the assigned property and effects in the hands of the assignees, or either of them.

And in taking such account the Master will charge said assignees with the gross proceeds of sales of merchandise and give them credit for amount of taxes paid; also for the full rent paid for the storehouse up to the date when Hunt moved his stock of groceries into the storehouse,

after which they are to be allowed only half the rents actually paid. Likewise they are to be credited with clerk hire paid out to the time of filing the bill, and not afterwards. Upon the balance in hand, after deducting these credits, the assignees are to be charged with legal interest from the first day of October, 1879, until the making of the report, when the court will order this balance, with interest accrued, to be paid in, and will enforce payment by appropriate process. The Master is also to ascertain and report the amounts due to the several plaintiffs for principal and interest upon their respective judgments. And out of the funds already in court, and those to be received from said assignees, the plaintiffs' debts are to be paid in full, if there be enough for that purpose; but in case of deficiency, *pari passu.* And, if there be a surplus, let it be returned to the assignees.

The appellant is entitled to his costs in this court.


EAKIN, J. In *Clayton v. Johnson, 36 Ark., 406,* I expressed, at length, my dissent from the opinion of the court, holding the act of 1859, concerning assignments, to be valid. To repeat it would serve no useful purpose, and be in questionable taste. Until the court may change its views of the act, it must be enforced.

Under the act, I concur with the court in holding that the assignment in this case was void as to creditors, who attack it. I think, too, that sufficient parties have been brought into the suit, and that the assignee has been properly held to account. I think, however, he can only be held to account for the *proceeds of the business* as a constructive trustee; and that such an accounting must ratify and adopt his acts.

In this view the directions given by the court seem harsh. I respectfully submit that they are not in accordance with

the principles upon which the account is ordered, nor with the usual practice in equity.

Where one is held to account as trustee, he is supposed to have been acting for the benefit of those who have the right. The beginning of the suit is such notice of the dissent of creditors to an assignment, that he ought not after that to dispose of any of the proceeds by placing them out of his reach in payment of preferred debts, but that does not at all affect his right to be allowed just and proper ex., penses, whilst the property is left under his control, even pending the suit. I think the directions should be for the allowance of all proper and necessary expenses down to the time of taking the account. If he be held to account for actual receipts at retail, he certainly should be allowed the retail expenses, by which the prices may be supposed to have been enhanced. If bricks be allowed there should be an allowance for straw. If it were intended to treat him as a tort-feasor, then the measure of his liability would be simply the value of the goods in lump when taken. But that principle is not the one on which this case proceeds.

*Stewart v. McMinn, 5 Sergeant & Rawle* is an example of good practice. That was the case of an assignment held void for want of record. The assignees were garnished by dissenting creditors. Upon accounting they were allowed not only all expenses incurred concerning the goods, but also all sums paid out to creditors under the terms of the instrument, before the garnishment.

The same was done in *Wakeman v. Grover, 4 Paige, 24;* another case of an assignment held void. Allowances were made for *all* expenses incurred in collecting the property and turning it into money, besides allowances for sums paid creditors before suit.

In *Ames v. Blunt et al., 5 Paige, 20,* the trustees were

saved harmless from all that had been done under the assignment up to the time of filing the bill. Nothing to show that current expenses were denied afterwards.

*Averrill v. Loucks, 6 Bar., 477,* shows nothing as to how the account was taken to determine the proceeds. It is a case, however, in which payments under the assignment were allowed.

In *Collumb v. Reed, 24 N. Y., 505,* the trustee was allowed credits for *all* the moneys which he had appropriated in good faith, *although it consumed the whole fund.*

In the case of *Riggs v. Murray, 2 Johnson's Ch., 582,* the trustee, although considered a party to the fraud, was held only accountable for the *net* sum received by him, after deducting charges and commissions.

My attention has never been called to any case where a trustee, by way of punishment for improper interference, has been denied reasonable outlays, during the whole period of his management after as well as before suit. The reported cases, where they explain at all the principle upon which the account is taken, are all to the contrary.

It is to be observed in this case that although in their bill the creditors make a formal prayer for an injunction and receiver, it is almost a year before they move the court for either, and then one was appointed by consent. Meanwhile the assignee was proceeding to sell under the assignment. It seems very much as if that were by consent of the complainants, and they should not be allowed, when the business proved unsatisfactory, to claim all the gross receipts, and compel the trustee to pay expenses out of his own pocket. I think he should be allowed *all* proper expenses up to the time of the account.