MARTIN V. B. SMITH *et al.*, Appellants and Respondents, *v.*
CHARLES WHITE *et al.*, Appellants and Respondents.

*Supreme Court, First Department, General Term, November 7, 1889.*

1. *Assignment for creditors. Void.*—An assignee, who is a party to the
   fraud for which an assignment for creditors is set aside, is not pro-
   tected by the void assignment.
2. *Same.*—He will not be allowed for money paid to the preferred creditors,
   counsel, appraisers or stenographer, but will be charged with the costs
   and expenses of the accounting, and the costs of the actions.
3. *Same.*—He will be credited with money paid for wages and salaries
   actually owing to the employees of the assignor at the date of the
   assignment.

Appeal from an order made at special term, overruling and
allowing exceptions to a referee's report.

*Blumenstiel & Hirsch*, for plaintiffs.

*Otto Horwitz*, for defendants.

DANIELS, J.—A judgment was recovered in favor of the
plaintiffs, setting aside as fraudulent a general assignment
made by the defendant, James White, to the defendant,
Charles Wise. The plaintiffs were judgment creditors of
White, and after the return of executions issued upon their
judgments, against property, unsatisfied, they commenced
this action. The court, upon the trial, not only found the
fact to be that the assignment was executed with the inten-
tion, on the part of the assignor, to hinder, delay and de-
fraud his creditors, but also that the assignee and his partner
in business were actuated by the same design and confed-
erated with the assignor to secure this result.

An appeal was taken from the interlocutory judgment to
the general term of this court, and the judgment was affirmed.

By virtue of this and the final judgment, the accounting under their provisions was referred to a referee for the purpose of ascertaining the property in the hands of the assignee which should be delivered over to the receiver appointed in the action. The referee took the accounting and made his report, exceptions were filed by the parties to different portions of the report, and these exceptions were determined and disposed of by the order from which the appeal has been taken.

In the proceedings before the referee, it appeared that the assignee had paid the sum of $4,871.94 to the Irving National Bank, in pursuance of a preference of the bank for that amount in the assignment. The referee disallowed this payment, and by the order from which the appeals have been brought the court overruled the decision of the referee and decided in favor of the allowance of this payment.

And if the assignee had not been a party to the fraud, and had made the payment in good faith, under the direction contained in the assignment, he, no doubt, would have been allowed a credit for this payment under the rule stated by the chancellor in Wakeman *v.* Grover, 4 Paige, 23. But that was not his position, as the facts were found and determined upon the trial of the action. It was then found and decided by the court, by way of conclusions of fact, that the defendant, Charles Wise, who was the assignee, and Leopold Wise, his partner, to induce the assignor to make the assignment, promised to pay him the sum of about $2.000, and agreed to continue the business with the assigned property, and employ the assignor and his wife in it at large salaries. It was further found that they agreed to assign to the wife of the assignor portions of the assigned property for his and her benefit, and that, pursuant to the agreement so made, both the assignor and his wife were employed by the assignee in the business afterwards carried on with the assigned property, at a salary to the assignor himself of $100 a week, and to his wife of $50 a week; and that they paid to the assignor

the sum of $440, being a portion of the money agreed to be paid him at the time the making of the assignment was under consideration ; and that they combined with the assignor, as a part of the plan under which the assignment was to be, and was made, to continue the business of the assignor with the assets of the estate for their and his mutual benefit.

It was further found by the court that a fictitious sale of the tangible property of the assigned estate, which was a shoe factory and its contents, was made to the defendant Leon M. Hirsch ; that this sale was formal only, for the benefit of the assignor and his partner, who furnished the money to pay the price for which the property was bought. The business was after that continued by the assignee and his partner, with the assent of this purchaser, and the assignor and his wife were employed in the business. And while it was carried on in this manner the assignor and his partner received the benefits, profits and income of the business.

The evidence upon which these conclusions of fact existed has not been included in the case, and it is accordingly to be assumed that it was ample to warrant these findings. And they exhibit a degree of fraud not only unusual in cases of general assignments but surprising and startling. As the facts have been stated, a deliberate combination was entered into between the assignor and the assignee and his partner, that the assignment should be executed and delivered to place the property beyond the reach of the creditors and secure its appropriation for the mutual benefit and advantage of these parties. They were each implicated in the intentional fraud perpetrated and brought about in this manner and through the sale afterwards made under the assignment by the assignee. The case is one of actual and positive fraud on the part of each of these individuals, and where that may be the nature and character of the transaction, there the well settled principle of the courts, as well as of sound morality and fair dealing, is to withhold all aid or assistance from either party to the fraud by way of extricating him from, or

protecting him against, the complications and risks into which he has involved himself. The assignment in this manner made is absolutely and entirely void from the beginning, and can afford no protection whatever to the parties who under color of its authority interfere with the property or assets of the assignor. It is the same, for all legal purposes, as if it never had been executed. The parties acting under it can derive no advantage from it, and in no form are able to appeal to it for protection, beyond that which may be found to be necessarily extended by reason of statutory provisions of the law.

This subject has been examined by the courts of different states under circumstances certainly no more aggravated by the fraud of the parties to the transaction than those now presented, and the conclusion has uniformly been maintained that the courts will extend no protection to the fraudulent assignee in the disposition which he may have made of the assigned property pursuant to directions contained in the fraudulent instrument, but he is to be held accountable for the property passing into his hands in all respects as a wrongdoer, without any protection further than that which may be positively directed for his interference with the debtor's estate. Sands *v.* Codwise, 4 Johns. 536; Wood *v.* Hunt, 38 Barb. 302, 309; Swift *v.* Hart, 35 Hun, 128; Dewey *v.* Moyer, 72 N. Y. 70; Davis *v.* Leopold, 87 N. Y. 620; Wilson *v.* Horr, 15 Iowa, 489; Goodwin *v.* Hammond, 13 Cal. 168; Holland *v.* Cruft, 20 Pick. 321; Bleakley's Appeal, 66 Pa. St. 187; Borland *v.* Walker, 7 Ala. 269. And the correctness and stability of this rule was in no manner denied in Hunt *v.* Weiner, 39 Ark. 70, or in Howe *v.* Camp, Walker, Ch., Mich., 427, or in Ames *v.* Blunt, 5 Paige, 13.

The payment of this amount by the assignee to the bank was a tortious and unlawful intermeddling with the property of the debtor, and as the assignment, by reason of the mutual fraud of the parties to it, was of no validity or effect, the assignee was rightly held liable by the referee to account for and pay over to the receiver the amount so disposed of.

The amount paid by way of preference under the assignment to the assignee and his partner of course is included within what has already been said, and was justly, as well as legally, disallowed to the assignee. So was the sum paid by him to counsel for services rendered to him under the assignment. As he had no power of authority by virtue of that void instrument to interfere with the property at all, it follows that he could not render the estate liable for the services performed by counsel under his direction. The same conclusion follows as to the amount paid to the persons who appraised the stock and machinery prior to the sale made by the assignee to the defendant, Hirsch. And that disposition was in like manner warranted of the charge made for moneys paid to stenographers. As the assignee had no right to interfere with the property in any respect whatever, he could not charge it with either of these alleged disbursements.

By the conclusions adopted by the referee, the defendants were charged with the costs and expenses of the accounting, but this charge was disallowed by the order from which the appeal has been brought. On what ground this disallowance was directed does not appear from the case, but it is entirely clear that the disposition of these costs and expenses directed by the referee was not only supported by the facts but sanctioned by the law. It was the wrong of the assignee and the persons confederated with him that had placed the estate in the condition in which this accounting became necessary for its recovery and appropriation to the payment of the debts of the creditors, and there is no sound principle that will permit them to be rewarded by the allowance of these charges against the property placed in the peril in which it was by their misconduct and wrong.

The tenor and effect of the decision of the court, as it has been stated in the interlocutory and final decree, was that the plaintiffs should recover their costs against the defendants. That part of the decision of the court was warranted.

by the fact that the action became necessary to redress the wrong perpetrated by the defendants and to secure the protection of this estate.

And it follows from the same theory that the expenses of the accounting should not be charged against the property, but should be charged against the defendants themselves. They are part of the expenses of redressing their willful and intentional wrong, and they, as wrong-doers, should bear and pay the amount. They voluntarily placed themselves in this position, and they are entitled to no aid or assistance whatever at the hands of the court in the way of relieving them from its consequences.

It was, however, directed by the final judgment that the accounting should be subject to diminution by "any lawful disbursement made or incurred by said assignee." No such lawful disbursement was proved or established before the referee beyond the amounts paid by the assignee to the employees of the assignor for wages due them at the date of the assignment. Those payments were lawful disbursements within the language of the judgment, for chapter 283 of the Laws of 1886 has directed that in all distributions of estates under assignments the wages and salaries actually owing to the employees of the assignor shall be preferred before any other debt. And this is the only item to which this language of the decree can have any application. The referee allowed these payments. The order made upon the determination of the exceptions to his report continued and maintained that allowance, and to that extent the defendants are entitled to their benefit. But as to all other payments made by the assignee, inasmuch as the assignment was absolutely void by reason of this fraudulent co-operation with the assignor in bringing it into existence, and managing the property and estate afterwards under it, neither he, nor those acting with him, are entitled to any protection whatever, but should account for and pay over the full amount of the property which passed into his or their possession, subject only to

this single deduction. And they should be charged with all the costs and expenses of the hearing and accounting before the referee.

The order should accordingly be modified in these respects, rejecting all allowances made for payments by the assignee except the single one for the payment of the wages of the persons in the employment of the assignor at the time. of the assignment. And the plaintiffs should be allowed their costs and disbursements on the appeals.

VAN BRUNT, P. J., and BRADY, J., concur.

## NOTE ON "LIABILITY OF ASSIGNEE IN PAYING UNDER GENERAL ASSIGNMENT."

The payment by an assignee to creditors, before a lien is obtained upon funds, is effectual to vest the title in such creditor, though the assignment is subsequently set aside for fraud. Knower v. Cent. Nat. Bk.; First Nat. Bk. v. Same, 124 N. Y. 552.

The payment of unpreferred creditors under a composition agreement, by the terms of which they were to receive a percentage of their claims out of the proceeds of assets which the purchaser failed to take and pay for, was held to have been made at the risk of the assignee and not to relieve him from accounting for the sum so paid, as assets. Hynes v. Campbell, 60 Hun, 391.

A general assignee is not protected in paying out, pursuant to the directions of the assignment, moneys received through the collection of negotiable paper which was held by the assignors as collecting agents only, where the collection has been effected and the moneys received subsequent to the assignment. Nat. B. & D. Bank v. Hubbell, 117 N. Y. 384. Where an assignee under an assignment, fraudulent upon its face, pays money to *bona fide* creditors of the assignor in accordance with the directions of the assignment, he will be protected, provided he does it in good faith and before any other creditor has obtained a lien upon the money. Id. Sullivan v. Miller, 106 N. Y. 635; Collumb v. Read, 24 Id. 505; Averill v. Loucks, 6 Barb. 470; Iddings v. Bruen, 4 Sandf. Ch. 417; Ames v. Blunt, 5 Paige, 13.

An assignee, where a preferred debt has been paid, but the assignment was afterwards set aside, is protected in making the payment. First Nat. Bank v. Cent. Nat. Bank, 53 Hun, 575. He cannot be called upon to account for it, nor to refund the moneys which he has so paid out pursuant to the directions in the assignment. Id.·

Where the case is one of actual, positive fraud as against the creditors of the assignor on the part of both him and the assignee, the assignment is, on its vacation, properly treated as void *ab initio*, and, as a consequence, it

affords no protection to the assignee to the prejudice of such creditors. Smith *v.* Wise, 132 N. Y. 172; Davis *i.* Leopold, 87 Id. 620; Swift *v.* Hart, 35 Hun, 128; Sands *v.* Todwise, 4 John. 536. While it is said that an assignee, chargeable with participation in the fraud, cannot effectually assert any equity in his behalf, he may have rights which courts will recognize, arising out of his relation to the property, taken by virtue of a fraudulent assignment, so far as they are consistent with those of the creditors of the assignee and do not prejudice them. Smith *v.* Wise, *ante;* Loos *v.* Wilkinson, 113 N. Y. 485. And, where the assignee, before an action is brought to set aside the assignment, pays a preferred claim, he is entitled to a credit for the amount so paid, though the assignment was subsequently set aside as fraudulent against the creditors of the assignors. Id. Knower *v.* Bank, 124 N. Y. 552.

---

DANIEL E. BANDMAN, Appellant, *v.* GEORGE JONES, as Treasurer, etc., Respondent.

*Supreme Court, First Department, General Term, November 7, 1889.*

*Deposition. Examination before trial.*—The affidavit, to obtain an examination of plaintiff before trial, must show the necessity, and the want of knowledge, or the means readily to obtain it, of the facts on which the answer is to be made, or the case prepared for trial.

Appeal from an order denying motion to vacate an order for the examination of plaintiff before trial.

*Benno Leowy,* for appellants.

*Townsend, Dyett & Einstein,* for respondents.